**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BEXTRA AND CELEBREX MARKETING SALES PRACTICES AND PRODUCT LIABILITY LITIGATION, _____/ This order relates to: All Bextra Purchase Claims Actions _____/ | No: CV-05-1699 CRB<br><br>MDL 1699<br><br>**MEMORANDUM AND ORDER RE: MOTION TO DISMISS PURCHASE CLAIMS MASTER BEXTRA COMPLAINT** |

These putative class action lawsuits arise out of the marketing and sale of the pain relief prescription drug Bextra. Now pending before the Court is the Pfizer defendants' motion to dismiss. After carefully considering the papers filed by the parties, and having had the benefit of oral argument, as well as further briefing after argument, the Pfizer defendants' motion is DENIED in part and GRANTED in part with leave to amend.

**ALLEGATIONS OF THE PURCHASE CLAIMS
MASTER BEXTRA COMPLAINT**

Non-steroidal anti-inflammatory drugs ("NSAIDs") have been widely used for pain relief for several years; however, NSAIDs have certain side effects, including gastrointestinal ("GI") toxicity which results in thousands of deaths every year. Purchase Claims Master Bextra Complaint ("Complaint") ¶ 6. Defendants (hereinafter referred to as "Pfizer") developed Celebrex and later Bextra, both known as Cox-2 inhibitors, with the hope that they

would have fewer GI side effects than traditional NSAIDs and thus become "blockbuster" drugs with sales in the billions of dollars. Id. ¶¶ 7-8, 56. The Food and Drug Administration ("FDA") approved Celebrex for sale in the United States in 1999. Id. ¶ 56. Pfizer sought approval for Bextra, a second generation Cox-2 inhibitor, in January 2001. Id. ¶ 57. In November 2001, the FDA approved Bextra for treatment of primary dysmenorrhea and arthritis, but not for acute pain. Id. ¶ 60-61. The FDA also concluded that Pfizer could not market Bextra as having fewer GI symptoms than other NSAIDs and instead required Pfizer to warn that use of Bextra presents certain GI risks. Id. ¶ 61.

Long before Pfizer obtained approval of Bextra, studies of Celebrex and Vioxx made Pfizer aware that Cox-2 inhibitors, such as Bextra, pose serious cardiovascular risks. Id. ¶¶ 62-77. A Pfizer study completed in 2004 showed a statistically significant increase in cardiovascular adverse events in patients treated with Bextra for seven days following coronary artery bypass surgery compared to those treated with a placebo. Id. ¶ 79. By November 2004, the FDA had received nearly ninety reports of severe skin reactions to Bextra. Id. ¶ 81. Accordingly, in December 2004, the FDA required Pfizer to add a cardiovascular warning to the Bextra label as well as a warning about the risk of life-threatening skin conditions. Id. ¶ 78.

On April 7, 2005, the FDA requested Pfizer to voluntarily withdraw Bextra from the market on the ground that "the overall risk versus benefit profile of Bextra is unfavorable," due to NSAIDs' "increased risk for serious cardiovascular (CV) adverse events," Bextra's "increased risk of serious skin reactions," "and the fact that Bextra has not been shown to offer any unique advantage over the other available NSAIDs." Id. ¶ 88. In particular, the FDA concluded that there are no "studies that show a GI safety benefit," or "better efficacy compared to other products." Id. ¶ 89. Pfizer immediately suspended Bextra sales. Id. ¶ 90.

Notwithstanding its knowledge of Bextra's risks and lack of superiority, Pfizer marketed Bextra to consumers and medical professionals as a "breakthrough" drug providing important clinical advantages over older and far less expensive NSAIDs. Id. ¶¶ 9, 16, 91. Pfizer's Bextra marketing scheme was deceptive because Pfizer (1) failed to warn of the

2

1  drug's increased cardiovascular risks, see, e.g., id. ¶¶ 14, 85, 92, 111; (2) failed to warn of
2  potentially life-threatening skin reactions, see, e.g., id. ¶¶ 14, 92, 111; and (3) falsely claimed
3  that Bextra provides superior pain relief and safety, including fewer GI side effects, than
4  traditional NSAIDs. See, e.g., id. ¶¶ 14, 17, 92-101.

Pfizer's marketing was successful: in 2004 Bextra achieved $1.2 billion in sales. Id.
¶ 114. Class members purchased Bextra "even though a monthly supply was much more
expensive than other NSAIDs." Id. ¶ 113. Bextra sold "for $2.53 to $6.45 per day
depending on dose, while NSAIDs sold for as little as $0.21 to $0.31 per day." Id. ¶ 18. "If
Defendants had not engaged in the wrongful marketing, advertising and promotion of Bextra,
Plaintiffs and Class Members would have paid for other equally available, less expensive
NSAIDs and other pain medications." Id.

## PROCEDURAL HISTORY

Plaintiffs filed several putative class actions seeking damages for their purchases of
Bextra at an inflated price as a result of Pfizer's allegedly deceptive marketing scheme. The
Multi-District Litigation Panel transferred all of the Bextra purchase claims, as well as the
product liability personal injury actions, to this Court. At plaintiffs' request, and over
Pfizer's objection, the Court allowed plaintiffs to file a Purchase Claims Master Bextra
Complaint. The Complaint includes four claims for relief: (1) RICO; (2) state consumer
protection laws; (3) unjust enrichment; and (4) breach of warranty. Plaintiffs seek damages
on behalf of a national class of all Bextra "End-Payors located in the United States, including
Consumers and Third Party Payors, who purchased and/or paid for Bextra." Complaint ¶ 3.

On August 16, 2006, the Court issued a Memorandum and Order granting in part and
denying in part Pfizer's motion to dismiss the Purchase Claims Master Celebrex Complaint
on preemption grounds. The Court will not repeat the analysis and discussion set forth in
that Order and will instead refer to the Order as appropriate.

//
//
//

## DISCUSSION

Pfizer moves to dismiss the Complaint on the ground that all of the claims conflict with the FDA's regulation of Bextra. In particular, Pfizer moves to dismiss plaintiffs' claims alleging that Pfizer failed to warn of Bextra's cardiovascular risks and failed to warn of the risk of serious skin conditions on the ground that the FDA considered and determined exactly what warnings Pfizer must provide. Pfizer also contends that plaintiffs' claims alleging that Pfizer should never have applied for FDA approval of Bextra or, at a minimum, should have stopped selling Bextra before being asked to do so, see Complaint ¶ 85, 87, likewise conflict with the FDA's determination that Bextra was safe and effective for use consistent with the FDA-approved label. Finally, Pfizer argues that the false advertising claims based on Pfizer's allegedly marketing Bextra as having fewer GI side effects and greater efficacy than traditional NSAIDs are also preempted because Pfizer submitted all of its marketing material to the FDA for review.

Plaintiffs' opposition to the motion to dismiss appears to abandon any claims based on the failure to warn of cardiovascular or skin disease risks, or based on Pfizer's decision to sell Bextra in the first place; indeed, plaintiffs do not even mention these claims when discussing why their claims do not conflict with the regulatory authority of the FDA. See Opposition at 1, 7, 10-11. Instead, plaintiffs explain that they challenge only Pfizer's promotion of Bextra in a manner inconsistent with Bextra's FDA-approved label and, in particular, Pfizer's promotion of Bextra as offering improved gastrointestinal toleration notwithstanding the FDA's determination that Bextra has no fewer GI side effects than traditional NSAIDs. Id. Accordingly, plaintiffs' claims based on Pfizer's failure to warn of cardiovascular and skin disease risks, as well as their apparent claim that Pfizer should not have offered Bextra for sale, are dismissed. The dismissal is with leave to amend to plead claims consistent with the Court's ruling on the Purchase Claims Master Celebrex Complaint; that is, to plead claims that do not seek to hold Pfizer liable for failing to advise consumers and physicians of a statement that the FDA has considered and found scientifically unsubstantiated. See August 16, 2006 Memorandum and Order at 13.

1  Plaintiffs' claims alleging that Pfizer falsely marketed Bextra as having fewer GI
2 symptoms and greater efficacy than traditional NSAIDs are not preempted. There is no
3 evidence that the FDA ever determined that Bextra is more effective or has fewer GI side
4 effects than traditional, less expensive NSAIDs; to the contrary, the Complaint alleges that
5 the FDA specifically determined that it is not and does not. See, e.g., Complaint ¶ 61. Thus,
6 there is no conflict between plaintiffs' claims and a determination of the FDA. For the
7 reasons stated in the August 16, 2006 Memorandum and Order at 15-17, the FDA's review of
8 Pfizer's promotional material is insufficient to support a finding of a conflict warranting
9 preemption. Accordingly, Pfizer's motion to dismiss these claims on conflict preemption
10 grounds is denied.

11  Pfizer also argues that even if the false advertising claims are not preempted, plaintiffs
12 have not identified any, or at least sufficient, Pfizer promotional activities directed at the
13 United States. The Complaint, however, alleges that Pfizer "aggressively marketed Bextra
14 directly to medical professionals . . . in order to leverage pressure on third-party payors,
15 medical care organizations, and large institutional buyers (e.g., hospitals) to include Bextra
16 on their formularies. Bextra's marketing campaign specifically targeted [those medical
17 professionals], and was designed to convince them of both the therapeutic and economic
18 value of Bextra." Complaint ¶ 13. Pfizer does not cite any authority that suggests that to
19 state a claim and survive a Rule 12(b)(6) motion plaintiffs must identify the specific
20 promotional activities they challenge. Pfizer's motion must be made on summary judgment,
21 not a motion to dismiss.

## CONCLUSION

23  For the reasons stated above and in the Court's August 16, 2006 Memorandum and
24 Order, Pfizer's motion to dismiss plaintiffs' claims alleging a "failure to warn" and a "failure
25 to pull Bextra from the market" is GRANTED with leave to amend. Pfizer's motion to
26 //
27 //
28 //

5

dismiss the false advertising claims as preempted and on the ground that plaintiffs have not sufficiently alleged false promotional activities in the United States is DENIED.

**IT IS SO ORDERED.**

Dated: August 24, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

G:\CRBALL\2005\1699\orderrepurchaseclaimsbextra.wpd                6