1  Elizabeth J. Cabraser
   ecabraser@lchb.com
2  Scott P. Nealey
   snealey@lchb.com
3  LIEFF, CABRASER, HEIMANN, & BERNSTEIN, LLP
   275 Battery Street, 30th Floor
4  San Francisco, CA  94111-3339
   Telephone: (415) 956-1000
5  Facsimile: (415) 956-1008

6  *Plaintiffs' Liaison Counsel*

7  [Additional Counsel Listed on Signature Page]

8                    UNITED STATES DISTRICT COURT

9                    NORTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| IN RE: BEXTRA AND CELEBREX MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION<br><br>THIS RELATES TO:<br><br>ALL CASES | No. M:05-CV-01699-CRB<br><br>MDL No. 1699<br><br>**PURCHASER PLAINTIFFS' RESPONSE IN OPPOSITION TO PFIZER'S MOTION TO DISMISS SECOND AMENDED PURCHASE CLAIMS MASTER BEXTRA COMPLAINT**<br><br>Date:  May 11, 2007<br>Time:  10:00 a.m.<br>Courtroom: 8, 19th Floor<br>Judge:  Honorable Charles R. Breyer |

Purchaser Plaintiffs[1] in the above-referenced matters ("Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum of points and authorities in opposition to Pfizer Defendants' ("Pfizer") Motion to Dismiss Second Amended Purchase Claims Master Bextra Complaint ("Def.'s Mot."). Plaintiffs adopt by reference all argument and authority in the Purchaser Plaintiffs' Response in Opposition to Pfizer's Motion to Dismiss Second Amended Purchase Claims Master Celebrex Complaint ("Celebrex Resp.") filed concurrently.

## I.  SUMMARY OF ARGUMENT

Plaintiffs are Third Party Payors ("TPPs") and consumers who would not have paid as much for Bextra, or purchased it at all, if Pfizer had not made misrepresentations as to its safety and efficacy. As discussed fully in the Celebrex Resp. and in summary with specific cites to the Bextra Complaint below, Pfizer's arguments are unsupported by relevant authority or misconstrue the allegations entirely. Because the Complaint adequately pleads claims for violation of state consumer fraud statutes, breach of implied warranty, and unjust enrichment, Plaintiffs respectfully ask the Court to deny Pfizer's motion to dismiss.

## II.  LEGAL AUTHORITY

**A.  The Applicable Standard for Dismissal**

*See* Celebrex Resp. § II.A.

**B.  Third Party Payors and the Association Plaintiffs Have Standing**

As set forth in detail in the Celebrex Resp., Pfizer's arguments that certain TPP Plaintiffs and Associational Plaintiffs lack standing to bring these claims are without merit. *See* Celebrex Resp., § II.B.1-6; *see also* Compl., ¶¶ 13-14, 163-64 (allegations that Pfizer directly marketed Bextra falsely to TPPs, doctors and consumers alike).

---

[1] Purchaser Plaintiffs are consumers and third party payors who purchased and/or paid for Bextra. *See* Plaintiffs' Second Amended Purchase Claims Master Bextra Complaint (the "Compl.), ¶¶ 23-42 describing the various types of plaintiffs, including health and welfare funds and health insurance companies. References preceded by "¶" are to the Compl.

**C.     Pfizer's "Failure to State a Claim" Arguments Lack Merit**

      **1.     Plaintiffs have pled sufficient proximate cause**

Pfizer argues that the Complaint does not include sufficient allegations of proximate cause. The allegations, however, established the requisite causal nexus between Pfizer's misrepresentations and Plaintiffs' decisions to pay for Bextra. Specifically, the Complaint alleges that Pfizer promoted Bextra to doctors, TPPs and consumers that resulted in over $1.29 billion in sales in 2004 alone. Compl., ¶ 15. Pfizer's marketing campaign conveyed "the uniform message that Bextra provided effective pain relief without the gastrointestinal and cardiovascular side effects of other NSAIDs." *Id.*, ¶ 100.

> If Defendants had not engaged in the wrongful marketing, advertising and promotion of Bextra, Plaintiffs and Class Members would have paid for other, equally effective and less expensive medications or would have purchased no medication at all. Had the truth been told about its safety and efficacy, Bextra would have sold at a price similar to that of other NSAIDs and would not have become a standard in the treatment of arthritis, dysmenorrheal and other non-FDA approved forms of pain relief.

*Id.*, ¶ 18. The Complaint therefore alleges sufficient proximate cause.

      **a.     Proximate cause does not require allegations that each Plaintiff saw and was influenced by particular advertisements**

There is no bright line rule that Plaintiffs must have seen and been influenced by the deceptive advertisements. All that is required is a sufficient causal nexus connecting Pfizer's wrongdoing with Plaintiffs' harm. The Complaint includes allegations that Pfizer falsely touted the superiority of Bextra over cheaper drugs and downplayed or hid Bextra's risks, dangers and disadvantages. Pfizer, although aware of these risks and although having been warned by the FDA repeatedly of the falsity of its advertising claims, never notified consumers or TPPs of these material defects in an effort to maintain Bextra's inflated price. Compl., ¶¶ 95-100. Plaintiffs overpaid for Bextra because of these misrepresentations and omissions. Had Pfizer not fraudulently marketed Bextra as a superior pain reliever with significantly lower GI complications, while downplaying the cardiovascular, cardiorenal and skin related risks, Plaintiffs would not have

purchased and/or paid for premium-priced Bextra. *Id*. ¶ 18. Based on these allegations and the legal arguments at Celebrex Resp., § II.C.1.a., Plaintiffs have alleged sufficient proximate cause.

### b. The misrepresentations to doctors are sufficient allegations of proximate cause

Allegations that Pfizer's misrepresentations influenced doctors to prescribe Bextra to Plaintiffs are sufficient allegations of proximate cause. *See* Celebrex Resp., § II.C.1.b. According to the Complaint, "Defendants' advertising efforts included blitzing doctors' offices with literature and verbal presentations designed to convince both doctors and consumers that Bextra was a superior drug…" Compl., ¶ 101. Such false advertising to doctors "helped increase the acceptance of Bextra by medical and dental providers." *Id*., ¶ 117; *see also id*., ¶ 123 (advertisement that falsely reassured doctors "that they can safely prescribe Bextra because of its 'established CV profile'"); *id*., ¶ 155(k) ("Defendants established Bextra as a standard course of treatment based upon the purchase and distribution of reprints of articles appearing in prestigious medical journals which Defendants knew were false and/or misleading.").

### c. Reliance, although not necessarily required, can be inferred based on the materiality of the misrepresentations

According to the Complaint,

> [i]f Plaintiffs and members of the Class had not been deceived concerning the safety and effectiveness of Bextra, they would have taken steps so as to not purchase Bextra at the prices set by Defendants, or would not have purchased Bextra, or would not have paid for physician visits to obtain prescriptions for Bextra, which offered no meaningful advantage and posed greater risk of harm than equally effective and far less expensive NSAIDs, available without a prescription.

¶ 162. The alleged facts, clearly indicating the materiality of the misrepresentations made to Plaintiffs and their prescribing physicians, are sufficient pleadings for any reliance requirement. *See* Celebrex Resp., § II.C.1.c.

### d. Purchaser Plaintiffs' claims are not barred by the learned intermediary doctrine

The learned intermediary doctrine is inapplicable to this case because the Complaint alleges both physicians and consumers were inundated with deceptive and misleading marketing tactics.

1  As such, physicians were "duped" and misled by Pfizer just like consumers.  *See* Compl., ¶¶ 100–
2  11, 117, 123, 164-65 and Celebrex Resp., § II.C.1.d.

### e.  "Fraud on the market" is neither pled nor necessary in this case

As discussed in detail at Celebrex Resp., § II.C.1.e., Plaintiffs do not rely on a "market" theory of proximate cause in order to support their claims.  Here, no matter how Pfizer tries to twist the allegations in the Complaint, Plaintiffs definitively assert that Pfizer engaged in a misleading and deceptive marketing scheme and that Plaintiffs, in turn, were misled and deceived by that scheme. *See*, *e.g.*, Compl., ¶ 14 ("Defendants' marketing . . . of Bextra was part of a scheme to create the impression of, and demand for, Bextra as a wide-ranging pain reliever . . . The scheme *was accomplished* by unlawful means . . .") (emphasis added); *id*., ¶ 15 ("As a result of Defendants' scheme, they were able to create a market for Bextra and to sell Bextra at a premium price over NSAIDs"); ¶ 162 ("[i]f Plaintiffs . . . had not been deceived concerning the safety and effectiveness of Bextra, they would have taken steps so as to not purchase Bextra. . . ."  Thus, the allegations of deception are sufficient for proximate cause and there is no need for Plaintiffs to rely on a market based theory.

### 2.  Plaintiffs allege injury in fact

As argued in detail in the Celebrex Resp., § II.C.3, Pfizer's "no injury" argument is essentially that Plaintiffs' claims should be dismissed because they do not allege any physical injury from ingesting Bextra or that Bextra failed to relieve anyone's pain.  Def.'s Mot. at 8-9. Pfizer's argument ignores or completely misconstrues the nature of Plaintiffs' claimed injury. Plaintiffs have been injured because they purchased a drug that was not as effective as claimed. *See* Compl., ¶ 18.  Such allegations are sufficient for injury in fact pleading requirements.

### 3.  The Complaint satisfies FRCP 9(b)

Contrary to Pfizer's arguments, Plaintiffs' Complaint satisfies the particularity requirements of Rule 9(b) and, therefore, Pfizer's motion to dismiss should be denied on this basis.  The Complaint provides Pfizer with sufficiently detailed allegations to defend against the charges and not just deny it did anything wrong.  *See*, *e.g.*, Compl., ¶¶ 99-101, 115, 135-137.

**D.      The Complaint States a Valid Claim for Breach of Implied Warranty**

Next, Pfizer argues the Complaint contains insufficient allegations of breach of implied warranties due to a lack of vertical privity and a lack of allegations that Bextra is defective. No vertical privity is required, and even if the Court finds such a requirement – privity is sufficiently alleged. According to the Complaint,

> Defendants embarked on a massive marketing campaign directed to doctors, third party payors and consumers to market Bextra as a "Powerful" drug clinically superior to and safer than older and far less expensive NSAIDs.
>
> * * *
>
> Plaintiffs . . . were injured by the cumulative and indivisible nature of Defendants' conduct. The cumulative effect of Defendants' conduct directed at physicians and consumers was to artificially create demand for Bextra in lieu of other NSAIDs and/or caused Bextra to command overpayments from Plaintiffs.

Compl., ¶¶ 9, 164. Plaintiffs have plainly alleged that Bextra was defective in comparison to the false claims used to promote its efficacy and safety. *Id*., ¶¶ 17, 65. Based on these factual allegations and the argument at Celebrex Resp., § II.D.1-3, Plaintiffs' claims for breach of implied warranty should survive.

**E.      The Complaint States a Valid Claim for Unjust Enrichment**

Plaintiffs have clearly alleged that they conferred a benefit on Pfizer in the form of overpayments and increased profits, that Pfizer accepted that benefit, and that it would be unjust under the circumstances for Pfizer to retain it. Compl., ¶¶ 168-171. Plaintiffs have therefore adequately stated claims for unjust enrichment, such that Pfizer's motion to dismiss must be denied. *See* Celebrex Resp., § II.E.

### III.      CONCLUSION

For all of the foregoing reasons, Pfizer's motion to dismiss should be denied in its entirety.

| | | |
|---|---|---|
| 1 | Dated:  March 16, 2007 | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP |

By _____
    Elizabeth J. Cabraser

Elizabeth J. Cabraser
**ecabraser@lchb.com**
Scott P. Nealey
snealey@lchb.com
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Plaintiffs' Liaison Counsel*

HAGENS BERMAN SOBOL SHAPIRO LLP


By   */s/ Steve W. Berman*
    Steve W. Berman

Steve W. Berman
steve@hbsslaw.com
Lisa Hasselman
lisah@hbsslaw.com
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

James R. Dugan, II, T.A. (LSBA No. 24785)
David L. Browne (LSBA No. 20729)
Douglas R. Plymale (LSBA No. 28409)
DUGAN & BROWNE, LLC
650 Poydras Street, Suite 2150
New Orleans, LA  70130
Telephone:  (504) 648-0180
Facsimile:  (504) 648-0181

Ben Barnow
BARNOW & ASSOCIATES
One North LaSalle Street
Suite 4600
Chicago, IL  60602
Telephone:  (312) 621-2000
Facsimile:  (312) 641-5504

Leonard Barrack
Robert Hoffman
Jeffrey Gittleman
Chad Carder
BARRACK, RODOS & BACINE
2001 Market Street
3300 Two Commerce Square
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

Don Barrett
BARRETT LAW OFFICES
450 Court Square
Lexington, MS 39095-0987
Telephone: (662) 834-2376
Facsimile: (662) 834-2628

L.S. Charfoos (N.Y. Reg #2061406)
Jason J. Thompson (P47184)
Ann K. Mandt (P46314)
CHARFOOS & CHRISTENSEN, P.C.
5510 Woodward Ave.
Detroit, MI 48202
Telephone: (313) 875-8080
Facsimile: (313) 875-8522

Frank M. Pitre
COTCHETT, PITRE, SIMON & McCARTHY
San Francisco Airport Officer Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Thomas M. Sobol
David S. Nalven, DN-2374
HAGENS BERMAN SOBOL SHAPIRO LLP
One Main Street, Fourth Floor
Cambridge, MA 02142
Telephone: 617-482-3700
Facsimile: (617) 482-3003

Howard M. Bushman
Lance A. Harke
HARKE & CLASBY LLP
155 South Miami Avenue, Suite 600
Miami, Florida 33130
Telephone: (305) 536-8219
Facsimile: (305) 536-8229

601207.1 - 7 - PLAINTIFFS' RESPONSE IN OPPOSITION TO PFIZER'S MOTION TO DISMISS BEXTRA COMPLAINT
CASE NO. 05-CV-01699-CRB

1
2
3
4
5

Garve W. Ivey, Jr.
Barry A. Ragsdale
William Adair, Jr.
IVEY & RAGSDALE
315 West 19th Street
P. O. Box 1349
Jasper, AL  35502-1349
Telephone:  (205) 221-4644
Facsimile:  (205) 252-8484

6
7
8

Lewis Kahn
KAHN GUATHIER LAW GROUP, L.L.C.
650 Poydras Street, Suite 2150
New Orleans, LA  70130
Telephone:  (504) 455-1400
Facsimile:  (504) 455-1498

9
10
11
12

Jonathan B. Lowe
LOWE MOBLEY & LOWE
P. O. Box 576
Haleyville, AL  35575-0576
Telephone:  (205) 486-5296
Facsimile:  (205) 486-4531

13
14
15
16

Christopher A. Neal
CHRISTOPHER A. NEAL & ASSOCIATES, P.C.
300 Harwood
Bedford, TX  76021
Telephone:  (817) 545-6100
Facsimile:  (817) 589-2530

17
18
19
20

Richard L. Horwitz
POTTER ANDERSON & CORROON, LLP
1313 N. Market St., Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192

21
22
23

William N. Riley
PRICE WAICUKAUSKI RILEY, LLC
301 Massachusetts Avenue
Indianapolis, Indiana 46204
Telephone:  (317) 633-8787
Facsimile:  (317) 633-8797

24
25
26
27
28

601207.1

- 8 -

PLAINTIFFS' RESPONSE IN OPPOSITION TO PFIZER'S
MOTION TO DISMISS BEXTRA COMPLAINT
CASE NO. 05-CV-01699-CRB

Jeffrey S. Goddess
ROSENTHAL, MONHAIT, GROSS & GODDESS
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE  19899-1070
Telephone:  (302) 656-4433
Facsimile:  (302) 658-7567

Art Sadin
SADIN LAW FIRM, P.C.
1104 S. Friendswood Drive, Suite A
Friendswood, TX  77546
Telephone:  (281) 648-7711
Facsimile:  (281) 648-7799

Christopher A. Seeger
SEEGER WEISS, LLP
One William Street
New York, NY  10004-2502
Telephone:  (212) 584-0700
Facsimile:  (212) 584-0799

Jeffrey L. Kodroff
SPECTOR, ROSEMAN & KODROFF, PC
1818 Market Street, Suite 2500
Philadelphia, PA  19106
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611

Ronald S. Goldser
ZIMMERMAN REED, PLLP
651 Nicollet Mall, Suite 501
Minneapolis, MN  55402
Telephone:  (612) 341-0400
Facsimile:  (612) 341-0844

*Attorneys for the Celebrex Purchaser Plaintiffs*

601207.1

- 9 -

PLAINTIFFS' RESPONSE IN OPPOSITION TO PFIZER'S MOTION TO DISMISS BEXTRA COMPLAINT
CASE NO. 05-CV-01699-CRB