IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BEXTRA AND CELEBREX MARKETING SALES PRACTICES AND PRODUCT LIABILITY LITIGATION, <br><br> This order relates to: <br><br> All Celebrex and Bextra Purchase Claims Actions | No. M: 05-1699 CRB <br><br> **MEMORANDUM AND ORDER RE: MOTION TO DISMISS PURCHASE CLAIMS IN SECOND AMENDED MASTER CELEBREX AMD BEXTRA COMPLAINTS FOR LACK OF STANDING AND RES JUDICATA** |

These putative class action lawsuits arise out of the marketing and sale of the prescription drugs Celebrex and Bextra. Now pending before the Court are defendants' motions to dismiss on the grounds of standing, res judicata, and failure to state a claim. This Memorandum and Order will address the standing and res judicata issues; the Court will issue a separate Memorandum and Order addressing the remaining issues. As the parties are familiar with the allegations of the Second Amended Master Complaints ("SAC"), the Court will not repeat them here.

## I. STANDING

The SAC makes claims on behalf of third-party payor plaintiffs (for example, health plans) under various states' consumer protection laws. Celebrex SAC ¶ 250. It also makes claims on behalf of five "association" plaintiffs: California Public Interest Research Group, Inc.; Health Care For All; North Carolina Fair Share; United Senior Action of Indiana; and

Wisconsin Citizen Action. Celebrex SAC ¶¶ 24, 31, 52, 66, 68. Defendants dispute the standing of these plaintiffs to bring their claims. In particular, they contend that 27 of the 30 named third-party payor plaintiffs ("TPPs") do not have standing to bring their claims for damages and restitution under the relevant state consumer protection statutes; that is, that the state statutes do not authorize the TPP's to bring claims under the statutes. They also contend that the associational plaintiffs do not have standing under Article III of the United States Constitution.

"A plaintiff has the burden of establishing the elements required for standing, and '[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" Takhar v. Kessler, 76 F.3d 995, 1000 (9th Cir. 1996) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1140 (9th Cir. 2003) (holding that to survive a Rule 12(b)(6) motion to dismiss, the plaintiffs must allege facts that, if proven, would confer standing upon the plaintiffs).

### A.   TPP Plaintiffs

Defendants argue that the TPP plaintiffs from Ohio, Michigan, Texas, New York, Alabama and Indiana do not have standing to bring claims under their respective states' consumer protection statutes.

#### 1.   Ohio

The Ohio Consumer Sales Practices Act ("the Act") provides that if the Act is violated "a *consumer* has a cause of action." Ohio Rev. Code § 1345.09 (emphasis added). "[T]he *consumer* may, in an individual action, rescind the transaction or recover the consumer's damages. Id. at § 1345.09(A) (emphasis added). "Consumer" "means a person who engages in a consumer transaction with a supplier." Id. §1345.01(D). Thus, the Ohio TPPs have standing to bring claims under the Act if they are (1) a "person" who (2) "engages in a consumer transaction with a supplier."

The TPPs are "persons" within the meaning of the Act. "Person" "includes an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or other legal entity." Id. §1345.01(B).

The TPPs have not, however, engaged in a "consumer transaction" as a matter of law. "Consumer transaction" is defined as "a sale, . . . or other transfer of an item of goods, a service, a franchise, or an intangible, *to an individual* for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." Id. §1345.01(A) (emphasis added). The Ohio courts have held that "individual," although not defined by the statute, is limited to "natural persons;" a corporation cannot be an "individual" within the meaning of section 1345.01(A). City of Findlay v. Hotels.com, L.P., 441 F.Supp.2d 855, 862 (N.D. Ohio 2006); Watkins & Son Pet Supplies v. Iams Co., 107 F.Supp.2d 883, 893 (S.D. Ohio 1999); Toledo Metro Federal Credit Union v. Ted Papenhagen Oldsmobile, Inc., 56 Ohio App.2d 218, 381 N.E.2d 1337 (1978). Accordingly, even if the sale of Celebrex and Bextra from defendants to the patients is characterized as, at least in part, a sale to the TPPs because the TPPs paid for the medicine, that sale does not qualify as a "consumer transaction" because transactions between suppliers and corporations, that is, non-natural persons, do not constitute sales to individuals and therefore do not qualify as "consumer transactions" for purposes of standing to bring a claim. It is thus unsurprising that plaintiffs have been unable to identify any case in which a non-natural person successfully brought a claim under Ohio's consumer protection statute.

Plaintiffs' only response is that the statute defines "person" as, among other things, "a corporation." That response, however, does not address whether the TPPs as "non-natural" persons can have engaged in a consumer transaction with defendants since a consumer transaction must involve a sale to a natural person. Moreover, "person" is used throughout the statute, for example, a supplier is an "other person." Id. § 1345.01(C). Thus, contrary to plaintiffs' argument, the Ohio courts' interpretation of the statute does not render meaningless the statute's definition of "person."

//

In sum, the defendants have proved as a matter of law that the TPPs do not have standing under the Ohio Consumer Sales Practices Act Ohio; accordingly, their claims under that statute must be dismissed.

### 2. Michigan

The Michigan Consumer Protection Act (MCPA) identifies a lengthy list of "(1) [u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MCL § 445.903(1). A "person" may bring a class action to recover damages caused by a method, act or practice in trade or commerce identified as unlawful in section 445.903. Id. § 445.911(3)(a). "Person" is defined as "a natural person, corporation, limited liability company, trust, partnership, incorporated or unincorporated association, or other legal entity." Id. § 445.902(d). As the TPPs are such "persons," they have standing to bring a claim under the Act if defendants' challenged acts were in "trade or commerce."

"Trade or commerce" "means the conduct of a business providing goods, property, or service primarily for personal, family, or household purposes." Id. § 445.902(g). According to the allegations of the operative complaints, defendants provided Celebrex and Bextra to the patients for personal purposes. The plaintiff TPPs allege they were damaged by false advertising of those goods because they paid more than they would have otherwise paid. Thus, the TPPs' claims fit squarely within the statutory language: they allege damages arising from defendants "unfair, unconscionable or deceptive acts" in the course of providing goods for personal purposes. Unlike the Ohio Act, the Michigan statute does not require a transaction between the plaintiff and the defendant that involves the sale of goods primarily for personal, family or household purposes; rather, it requires only that the plaintiff's damages arise from defendant's provision of such goods. In other words, the statute does not require the plaintiff to be the consumer who purchased the goods primarily for personal purposes. See Action Auto Glass v. Auto Glass Specialists, 134 F.Supp.2d 897, 901 (W.D. Mich. 2001); see also DIRECTV, Inc. v. Cavanaugh, 321 F.Supp.2d 825, 838 (E.D. Mich. 2003) (noting that the "trade or commerce" requirement can be satisfied even in the absence of a direct transaction between the plaintiff and the defendant); Florists' Transworld Delivery, Inc. v.

4

Fleurop-Interflora, 261 F.Supp.2d 837, 848-49 (E.D. Mich. 2003) (following Auto Glass and holding that a plaintiff has standing as long as the defendant's unfair/deceptive acts arise out of the sale of goods for personal, family or household purposes).

The Michigan Supreme Court's decision in Slobin v. Henry Ford Health Care, 666 N.W.2d 632 (Mich. 2003), does not alter the above analysis. In Slobin, a plaintiff brought suit claiming that a hospital charged excessive fees to copy medical records the plaintiff's lawyers had requested for litigation. The court held the claim did not satisfy the "trade or commerce" requirement, that is, the requirement of a business providing goods primarily for personal, family or household services because "obtaining medical records for the purpose of litigation is not primarily for personal, family, or household use." Id. at 634. The court explained:

> The law firm here did not act as a mere conduit or intermediary, procuring the medical records in order to pass them along for plaintiff's "personal, family or household" use. Rather, the medical records were sought principally so that the law firm itself could engage in its own business or commercial enterprise, namely, the evaluation and pursuit of legal avenues to procure financial rewards and other relief for its client. While there will sometimes be a fine line between activities within the scope of the MCPA and those beyond its coverage, we believe that the activities in question here are too indirectly related to plaintiff's "personal, family, or household" use to fall within the act.

Id. at 635.

Slobin does not suggest that obtaining prescription medication for personal consumption is not "primarily for personal, family or household use." There is no serious dispute that the transactions that gave rise to the TTP plaintiffs' alleged damages–purchasing Celebrex and Bextra–were primarily for personal purposes, that is, the personal use of the patients. Nor does Slobin cast doubt on the Action Auto Glass court's conclusion that the Act does not require the plaintiff itself to have engaged in the "trade or commerce" transaction with the defendant. Accordingly, defendants have not proved as a matter of law that the Michigan TPP plaintiffs do not have standing.

### 3. New York

To state a prima facie case under New York's consumer protection statute (General Business Law section 349), plaintiffs must show: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the

5

plaintiff suffered injury as a result of the deceptive act." Vitolo v. Mentor H/S, Inc., 426 F.Supp.2d 28, 33 (E.D.N.Y. 2006) (internal quotation marks and citation omitted). The issue on defendants' motion to dismiss is the first factor: whether the challenged act or practice was consumer-oriented.

"With regard to the first factor, the gravamen of the complaint must be consumer injury or harm to the public interest. The critical question, then, is whether the matter affects the public interest in New York, not whether the suit is brought by a consumer or a competitor." Vitolo, 426 F.Supp.2d at 34 (internal quotation marks and citation omitted); see also Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995) (noting that "plaintiffs claiming the benefit of the New York consumer protection statute-whether individuals or entities . . . -must charge conduct of the defendant that is consumer-oriented" ).

Defendants rely on In re Rezulin Prods. Liab. Litig., 392 F.Supp.2d 597, 613 (S.D.N.Y. 2005), to support their argument that "the gravamen of the complaint" is not, as a matter of law, consumer injury or harm to the public interest. In Rezulin, the plaintiff health benefits provider sued the manufacturer of the diabetes drug Rezulin, claiming that the manufacturer misrepresented the safety and efficacy of the drug to the provider's pharmacy benefit manager. The plaintiff alleged that the pharmacy benefit manager had acquired the drug on behalf of the plaintiff at prices higher than those charged for safer and better drugs. On summary judgment the district court held the manufacturer not liable because the conduct for which the plaintiff sought to hold the defendant liable was directed at the pharmacy benefit manager, not at diabetes patients. The conduct "consisted of [the defendant's] efforts to persuade [the pharmacy benefit manager], a large and sophisticated business, to include Rezulin in its formularies. The nature of this marketing effort--communication from one sophisticated business to another--was quite different from that of any promotion aimed directly at diabetes patients." Id. at 613. The court also noted, however, that "[a]s anyone who watches television nowadays knows, some prescription drugs are promoted directly to potential users. The record is silent as to whether that occurred with respect to Rezulin. But

6

that is immaterial. The injury complained of in this case is that caused by [the defendant's] alleged deception of [the plaintiff], another large and sophisticated business entity." Id. at 613 n.93.

The TPP plaintiffs' allegations here are not as limited as the plaintiff's evidence in Rezulin. The SAC alleges that defendants falsely advertised Celebrex and Bextra directly to consumers, as well as physicians and TPPs. See, e.g., Celebrex SAC ¶ 13 ("In an elaborate and sophisticated manner, Defendants aggressively marketed Celebrex directly to consumers and medical professionals (including physicians and leading medical scholars) in order to leverage pressure on Third-Party Payors, medical care organizations, and large institutional buyers (e.g., hospitals) to include Celebrex on their formularies."). Moreover, the requirement that the challenged conduct be "consumer-oriented may be met by a showing that the practice has a broader impact on the consumer at large." Sheth v. New York Life Ins. Co., 273 A.D.2d 72, 73 (N.Y. App. Ct. 2000). The conduct challenged here–misleading advertising to doctors and consumers that Celebrex and Bextra have fewer gastrointestinal side effects than traditional non-steroidal pain relievers–has an impact on consumers who may also pay more for their prescriptions. Accordingly, defendants have not proved as a matter of law that the New York TPP plaintiffs do not have standing to bring claims under the New York consumer protection statute.

### 4. Texas

The Texas Deceptive Trade Practices Act (DTPA) gives a "consumer" a private right of action. Tex Bus. & Com. § 17.50. A "consumer" is defined as

> an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, *except that the term does not include a business consumer that has assets of $25 million or more*, or that is owned or controlled by a corporation or entity with assets of $25 million or more.

Id. § 17.45(4) (emphasis added). The Celebrex and Bextra SACs include one Texas TPP: the National Healthcare Insurance Company. Defendants contend that National Healthcare has assets exceeding $25 million and thus is not a consumer authorized to bring suit. In support

7

of their argument, they ask the Court to take judicial notice of National Healthcare's public filing with the Texas Department of Insurance. The filing demonstrates that National Healthcare had assets in excess of $25 million in 2004, 2005, and 2006, that is, at the time it filed its claims.

In their opposition to the motion to dismiss plaintiffs responded only that the $25 million asset limitation is an affirmative defense and that defendants had not met their burden of proof; they did not address, let alone dispute, defendants' request for judicial notice. At oral argument the Court asked plaintiffs if they do in fact dispute that National Healthcare's assets exceed $25 million. Although the question was squarely presented by the papers, plaintiffs' counsel responded that he did not know. The Court nevertheless gave plaintiffs the opportunity to submit additional argument and evidence on the issue.

In their post-hearing submission plaintiffs do not contest that the Court may take judicial notice of the Texas Department of Insurance records that demonstrate that National Healthcare has assets in excess of $25 million; instead, they make two legal arguments. First, they contend that because National Healthcare's *net* assets are less than $25 million, it qualifies as a consumer under the statute. Second, they argue that National Healthcare's reserves, which are required by Texas law, should not be counted in computing National Healthcare's assets, and that when such reserves are excluded its assets are less than $25 million. Neither legal argument is persuasive.

First, nothing in the plain language of the statute limits the calculation of assets to "net" assets for purposes of standing to bring a claim; if the Texas legislature had intended such a limitation it could have included one. It is thus unsurprising that plaintiffs are unable to cite any caselaw to support their novel interpretation of assets as meaning "net assets."

Second, nothing in the plain language of the statute also allows an insurance company plaintiff to deduct from its computation of assets the amount of its reserves required by law. The one case cited by plaintiffs is inapposite. Bryan v. Central Am. Life Ins. Co., 296 S.W.2d 628 (Tex. Civ. App. 1956), involved the appropriate method for computing the value of an

8

insurance company's personal property for tax purposes; it in no way suggests that "assets" as used in the DTPA excludes required reserves.

In sum, defendants have proven through judicially noticeable facts that National Insurance has assets, as that term is used in the DTPA, in excess of $25 million. See Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001) (holding that a court may consider judicially-noticeable facts on a Rule 12(b)(6) motion to dismiss). As plaintiffs do not dispute that National Insurance's gross assets exceed $25 million, and as the Court concludes as a legal matter that "assets" as used in the DTPA refers to "gross assets," defendants have also proved as a matter of law that National Insurance is not a "consumer" authorized to bring suit under the DTPA. Accordingly, National Insurance's DTPA claims must be dismissed without leave to amend.

### 5. Alabama and Indiana

There are 13 Alabama and Indiana TPP plaintiffs. The SAC, however, does not assert any claims under the consumer protection laws of these states on behalf of these TPP plaintiffs. Celebrex SAC ¶ 250. The critical question, then, is whether they could make such claims if given leave to amend to do so.

#### a. Alabama

The Alabama Deceptive Trade Practices Act ("Alabama DTPA") provides a private right of action to "consumers" who are damaged by any person's act that violates the statute. Ala. Code 8-19-10(a). Thus, only "consumers" have a private right of action under the Alabama DTPA. Deerman v. Federal Home Loan Mortg. Corp., 955 F.Supp. 1393, 1399 (N.D. Ala. 1997).[1] The Alabama DTPA defines "consumer" as "[a]ny natural person who buys goods or services for personal, family or household use." Ala. Code, 8-19-3(2). It is undisputed that the TPPs are not "natural persons," and thus they do not have a private right

---

[1] The DTPA also provides a private right of action to "persons" for violations of subsections 18-19-5 (19) and (20), see Ala. Code § 8-19-10(a), but those subdivisions are inapplicable to the allegations here.

9

of action.  Accordingly, it would be futile to give plaintiffs leave to amend to allege Alabama DTPA claims on behalf of Alabama TPPs.

### b. Indiana

The Indiana Deceptive Consumer Sales Act (the "Indiana Act") identifies a litany of unlawful "deceptive acts."  Ind. Code § 24-5-0.5-3 ("[t]he following acts or representations as to the subject matter of a consumer transaction are deceptive acts").  The Indiana Act gives a private right of action to "a person" "for the damages actually suffered as a consumer" as a result of the deceptive acts.  Ind. Code § 24-5-0.5-4(a).  Thus, the Indiana TPPs will have standing to bring claims under the Indiana Act if they are (1) a person, (2) who suffered damages as a consumer as a result of defendants' deceptive acts.

The Indiana TPPs qualify as a "person;" the Act defines "person" as an individual, corporation, . . . or other legal entity."  Ind. Code § 24-5-0.5-2(2).  The difficult question is whether they suffered damages "as a consumer."

There is a dearth of Indiana law on this issue.  In Classic Car Centre, Inc. v. Haire Mach. Corp., 580 N.E.2d 722 (Ind. App. 3 Dist. 1991), the court held that a corporation did not have standing to bring a claim under the Indiana Act for damages arising from automobile service provided to the corporation.  The court reasoned that the Act is limited to consumer transactions involving sales or service to "an individual," and that "an individual" is a natural person not a corporation.  Id. at 723.  Classic Car Centre, however, was interpreting an earlier version of the Indiana Act that is no longer good law.  That version defined "consumer transaction" as a sale . . . *to an individual* for purposes that are primarily personal, family, or household, or a solicitation to supply any of these things," and thus limited consumer transactions to natural persons, as does the Ohio statute.  Id. (citing Ind. Code § 24-5-0.5-2(1) (1991)).  The current version of the statute defines consumer transaction as "a sale . . . *to a person*," for purposes that are primarily personal, familial, charitable, agricultural, or household."  Ind. Code § 24-5-0.5-2(1) (emphasis added).  See Libert v. Publishing, Inc. v. Carter, 2007 WL 1805769 (Ind. App. June 25, 2007) (explaining that since Classic Car was decided, the Indiana legislature changed the definition of consumer transaction to refer to a

10

sale or service to a "person" rather than to an "individual"). Thus, a sale to a corporation "for purposes that are primarily personal" qualifies as a consumer transaction within the meaning of the statute.

As defendants have not demonstrated that their sale of Celebrex and Bextra to the TPPs for the patients' personal use does not qualify as a consumer transaction as a matter of law, the Court must give plaintiffs leave to assert claims under the Indiana Act. Defendants' reliance on the unexplained dicta in Welborn Clinic v. MedQuist, Inc., 301 F.3d 634, 641 (7th Cir. 2002), is misplaced. The Welborn Clinic court relied on Classic Car which, as is explained above, was interpreting language that has since been removed from the Act.

### B. The Associational Plaintiffs

The SACs each include five associations as named plaintiffs. Defendants move to dismiss their claims for lack of standing.

The Ninth Circuit has set forth the three-part test for associational standing:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and © neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Lake Mohave Boat Owners Ass'n v. National Park Service, 78 F.3d 1360, 1367 (9th Cir. 1995) (citations omitted). In Lake Mohave, the court held that the boat owners' association did not have standing because the association's pursuit of restitution of rental fees failed the third part of the test:

> [T]he damages claims are not common to the entire membership, nor shared by all in equal degree. To the contrary, whatever injury may have been suffered is peculiar to the individual member concerned, and both the fact and extent of injury would require individualized proof. Thus, to obtain relief in damages, each member . . . who claims injury as a result of respondents' practices must be a party to the suit.

Id. (internal quotation marks and citations omitted). "Awarding restitution to [the association] on behalf of its members would require individualized proof. Therefore, [the association] lacks standing to bring a claim for this remedy on behalf of its members." Id. This reasoning applies to those members of the association plaintiffs who took Celebrex or Bextra; to obtain

11

relief in damages they must be a party to the suit as not all plaintiffs and absent putative class members suffered the same injury.

Plaintiffs respond that in addition to damages claims, they make claims for injunctive and declaratory relief. This argument concedes that the associational plaintiffs' claims for damages must be dismissed with prejudice. The Court will also dismiss their injunctive and declaratory relief claims as well. These plaintiffs do not need to make these claims as there are many plaintiffs already in these lawsuits who are bringing the same claims and who indisputably have standing to make the claims.

Moreover, as for the first standing factor, the associational plaintiffs do not and cannot allege that all of their members took Celebrex or Bextra; at most they allege that some of their members did so. Accordingly, the motion to dismiss the claims of the associational plaintiffs will be granted.

## II.    PLAINTIFF CAVALIER HOMES, INC.

Plaintiffs do not oppose defendants' motion to dismiss the claims of plaintiff Cavalier Homes, Inc. on res judicata grounds.

## CONCLUSION

For the reasons explained above, defendants' motion to dismiss the claims of the Ohio TPP plaintiffs, the Texas TPP (National Healthcare), and the associational plaintiffs are GRANTED for lack of standing. Their motion to dismiss the claims of the Michigan and New York TPP plaintiffs on standing grounds is DENIED, and plaintiffs are given 20 days leave to amend to allege claims on behalf of the Indiana TPP plaintiffs. Such leave is denied as futile for the Alabama TPP plaintiffs. The claims brought by Cavalier Homes, Inc. are also DISMISSED with prejudice.

**IT IS SO ORDERED.**

Dated: July 5, 2007

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE