IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE BEXTRA AND CELEBREX MARKETING, SALES PRACTICES AND PRODUCT LIABILITY LITIGATION, _____/ *This Order relates to:* All Celebrex and Bextra Purchase Claims Actions _____/ | No. MDL 05-01699 CRB **MEMORANDUM AND ORDER** |

These multi-district litigation lawsuits arise from defendants' marketing and sale of the prescription pain relief medications Celebrex and Bextra. Plaintiffs have filed putative class actions alleging that defendants falsely marketed the drugs as superior to less expensive over-the-counter pain relief medications. Now pending before the Court is defendants' motion to dismiss the consolidated Celebrex Second Amended Purchasing Claims Complaint and consolidated Second Amended Bextra Purchasing Claims Complaint on the grounds of standing and failure to state a claim. The Court has previously filed an order resolving defendants' standing arguments. See July 5, 2007 Memorandum and Order. This Memorandum and Order addresses defendants' failure to state a claim arguments. While the Order refers to the Celebrex Second Amended Complaint ("SAC"), the arguments as to the Bextra SAC are the same and will not be separately analyzed.

## BACKGROUND

The gravamen of plaintiffs' allegations is that defendants successfully marketed Celebrex by intentionally misrepresenting its effectiveness and safety over other less expensive drugs. In particular, defendants (1) falsely claimed that Celebrex had fewer gastrointestinal side effects than traditional non-steroidal anti-inflammatory drugs ("NSAIDs"), (2) falsely claimed that Celebrex improved quality of life, and (3) falsely claimed that Celebrex is cardioprotective or at least cardiovascular safe.

Plaintiffs propose a class of all "end-payor" (non-resellers) of Celebrex, that is, all consumers and third-party payors in the United States from December 1, 1998 through the present. The SAC includes three claims for relief: (1) state consumer protection laws (for every state and territory); (2) unjust enrichment; and (3) breach of warranty.

Defendants move to dismiss plaintiffs' consumer protection claims on several grounds. First, they contend that plaintiffs allege an improper market theory of causation. Second, they renew their related argument that plaintiffs have not alleged injury in fact. Defendants' arguments are premised on their assertion that the SAC does not allege that any physician relied on the alleged misrepresentations in deciding to prescribe Celebrex for a particular patient. They also move to dismiss the breach of warranty and unjust enrichment claims for failure to state a claim.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 772 (9th Cir. 2002). The issue is not whether plaintiffs will ultimately prevail, but whether they are entitled to offer evidence to support their claims. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). "Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Id. Thus, the Court may not grant defendants' motion to dismiss without leave to amend "unless it appears beyond doubt

2

that the plaintiff[s] can prove no set of facts in support of [their] claim[s] which would entitle [them] to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

## DISCUSSION

### I.   The State Consumer Protection Statutes

#### A.   Market Theory of Causation

Defendants' primary argument is that all of plaintiffs' state consumer protection law claims fail as a matter of law because plaintiffs rely on a "market causation" theory of damages, a theory that was rejected by the Illinois Supreme Court in Oliveira v. Amoco Oil Co., 776 N.E.2d 151 (Ill. 2002).

In Oliveira, a consumer brought a class action against Amoco Oil Company ("Amoco") under the Illinois Consumer Fraud and Deceptive Business Practices Act. The plaintiff alleged that Amoco engaged in a deceptive advertising campaign for its premium gasolines. The Illinois statute, as do most state consumer fraud statutes, requires the plaintiff to prove that the alleged fraud proximately caused the plaintiff's damages. 776 N.E.2d at 140, 149. The plaintiff, however, did not allege that Amoco's deceptive advertisements (the fraud) "induced him to buy gasoline or that he was deceived by the ads." Id. at 140. "Instead, plaintiff alleged that he was damaged by defendant's advertisements because the ads created an 'artificially inflated' price for the gasoline he purchased." Id. Under this "market theory" of causation, the deceptive advertising scheme increased demand and as a result Amoco was able to charge an inflated price for its premium gasolines. Id. at 140-41. "Therefore, 'all purchasers of Amoco's premium gasolines were injured irrespective of whether they did or did not see or hear the specific advertisements and marketing materials in question.'" Id. at 141.

The Illinois Supreme Court rejected this market theory of causation. It held that the plaintiff had not adequately alleged causation because he did not allege that he was "in any manner" deceived. Id. at 154. Under the plaintiff's market theory, purchasers of Amoco's premium gasolines who saw the deceptive ads but never believed them, or never even saw or heard the ads, would nonetheless have valid claims. The court concluded that "to properly

3

plead the element of proximate causation in a private cause of action for deceptive advertising brought under the Act, a plaintiff must allege that he was, in some manner, deceived." Id. at 155; see also Shannon v. Boise Cascade Corp., 805 N.E.2d 213, 217 (Ill. 2004) ("The teaching of Oliveira . . . is that deceptive advertising cannot be the proximate cause of damages under the Act unless it actually deceives the plaintiff").

Oliveira does not doom plaintiffs' complaint because plaintiffs have not alleged a market theory of causation; instead, plaintiffs allege that they were deceived by defendants' allegedly false advertising. The SAC alleges that "[i]n an elaborate and sophisticated manner, Defendants aggressively marketed Celebrex directly to consumers and medical professionals . . . . to convince all of these groups of both the therapeutic and economic value of Celebrex." SAC ¶ 13. The gravamen of the complaint is that even though Celebrex is no better than traditional NSAIDs, defendants convinced physicians to prescribe Celebrex and third-party payors to pay for it–at 10-times the cost of traditional NSAIDs–by falsely claiming that it is superior to traditional NSAIDs. See, e.g., Celebrex SAC ¶ 19, 129, 130, 137. Defendants' marketing was successful: "Celebrex set an all time record for the shortest time from synthesis of the drug molecule to $1 billion in sales." Id. ¶ 16. "If Defendants had not engaged in the wrongful marketing, advertising and promotion of Celebrex, Plaintiffs and Class Members would have paid for other equally effective and less expensive medications or made no purchase at all." Id. ¶ 19. Thus, plaintiffs' theory is that all plaintiffs were damaged by defendants' misrepresentations because their physicians would not have prescribed Celebrex, and therefore they would not have purchased Celebrex, but for the deceptive marketing. This theory is precisely the type of causation allegation required by Oliveria.

Defendants' lament that plaintiffs do not allege that they saw specific advertisements or that their physicians prescribed the medication because of any specific advertisement is unavailing. As the Supreme Court of Illinois noted in Shannon, the consumer plaintiffs need not have been aware of defendants' false claims in order to have been actually damaged by

those claims. Shannon involved deceptive advertising for siding used in home building. The court explained:

> Although proof of actual deception of a plaintiff is required, this is not to say that the deception must always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the Act. For instance, if the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home, the damage could arguably have occurred "as a result of" the indirect deception, as required by section 10a(a) of the Act. In those circumstances, the purchaser, who may have no independent knowledge of the qualities or expected performance standards of siding, is deceived because of the deception of the builder, architect or contractor, who reasonably should have had correct knowledge.

805 N.E.2d at 218. Thus, a consumer may suffer actual damages from deceptive advertising if the consumer purchased a product as a result of the advertisements' deception of another. Plaintiffs have pled such deception here: they allege that defendants' deceptive marketing was aimed at convincing the entire medical community that Celebrex had benefits over traditional NSAIDs that justified its dramatically higher cost. The unmistakable inference from the SAC's allegations is that *there is no reason for physicians to prescribe and for consumers and third-party payors to pay for Celebrex other than defendants' false claims;* thus, the physicians must have been aware of those false claims when they prescribed the drug. For purposes of defendants' motion to dismiss, that inference must be accepted as true. Oki Semiconductor Co., 298 F.3d at 772. Accordingly, plaintiffs have alleged actual damage from the allegedly misleading advertisements, not a market theory of causation.

Defendants' reliance on Prohias v. Pfizer, Inc., 485 F.Supp.2d 1329 (S.D. Fla. 2007) is equally unpersuasive. In Prohias, plaintiffs sued for deceptive advertising of the drug Lipitor, a cholesterol-lowering drug. It was undisputed that Lipitor does in fact lower cholesterol. Plaintiffs contended, however, that defendant falsely claimed that Lipitor also reduces heart disease. The district court ruled that two of the named plaintiffs had failed to allege injury in fact because they still pay for Lipitor notwithstanding their knowledge of its alleged lack of benefits. Id. at 1334-35.

> Taking the allegations in the complaint in the light most favorable to these plaintiffs, who continue to pay for Lipitor with knowledge as to its alleged limitations, I cannot come up with any theory upon which they are actually injured or aggrieved by the allegedly misleading advertisement. Rather, as

5

explained above, the fact that they currently take Lipitor, in light of the information they have, requires me to conclude that they take Lipitor for its cholesterol-reduction or other undisputed health benefits, and therefore cannot claim to have suffered any damage from the allegedly misleading statements about Lipitor's coronary benefits.

Id. at 1336.  In light of this lack of injury, these two plaintiffs claimed a "market theory" of causation; that is, they alleged that they paid a higher price than the market would have borne if not for the false advertising of the heart benefits.  Id. at 1337.  The court rejected this theory because it would "require evidence of the hypothetical price at which Lipitor would sell if not for the misleading advertisement."  Id.

Prohias is inapplicable to the allegations here.  Defendants have not demonstrated that any of the named plaintiffs allege that they are still taking Celebrex (and, of course, none can be taking Bextra as defendants removed it from the market).  Nor have defendants shown that plaintiffs allege that they are took Celebrex for reasons other than its touted superiority to traditional NSAIDs.  Rather, plaintiffs allege that they would not have purchased Celebrex and would have purchased a dramatically less expensive NSAID, or no pain reliever at all, but for defendants' advertisements claiming Celebrex's superiority.  As the Court explained above, this theory is not a market theory of causation; instead, it is a theory that plaintiffs were deceived by the misrepresentations.  The other cases cited by defendants are inapplicable for the same reason as Prohias.  See Heindel v. Pfizer, Inc., 381 F.Supp.2d 364, 379-81 (D.N.J. 2004) (rejecting plaintiffs' market theory that they paid too much for Celebrex because they were not warned of the cardiovascular side effects); New Jersey Citizen Action v. Schering-Plough, 367 N.J. Super. 8, 15-16 (2003) (rejecting market theory that plaintiffs were harmed because they paid higher price for allergy medicine; plaintiffs did not and could not allege that they bought medicine because of the misrepresentations).

Plaintiffs' theory of causation is similar to that alleged in Desiano v. Warner-Lambert Co., 326 F.3d 339 (2nd Cir. 2003).  Desiano involved Rezulin, which was withdrawn from the market due to liver toxicity.  The Desiano plaintiffs brought a class action seeking relief on behalf of health insurers that paid for Rezulin for their insureds.  The district court

6

1 dismissed the complaint on the ground that the drug did not harm, and indeed benefitted,
2 many of the consumers who took Rezulin. The Second Circuit reversed:

> Plaintiffs allege an injury directly to themselves; an injury, moreover, that is unaffected by whether any given patient who ingested Rezulin became ill. Plaintiffs' claim is that the Defendants' wrongful action was their misrepresentation of Rezulin's safety, and that this fraud directly caused economic loss to them as purchasers, since they would not have bought Defendants' product, rather than available cheaper alternatives, had they not been misled by Defendants' misrepresentations. Thus the damages-the excess money Plaintiffs paid Defendants for the Rezulin that they claim they would not have purchased "but for" Defendants' fraud-were in no way "derivative of damage to a third party.

Id. at 349. The plaintiffs here similarly adequately allege causation. At oral argument defendants appeared to concede that *if* the SAC alleged that physicians and their patients were deceived by the allegedly deceptive advertising, the SAC would not be based on a market theory of causation. Defendants asserted, however, that such allegation is not in the SAC and could not be "imputed" to the SAC's allegations. The Court disagrees. Defendants' argument ignores the well-established law that on a motion to dismiss for failure to state a claim the Court must draw all reasonable inferences in favor of the non-moving party. Oki Semiconductor Co., 298 F.3d at 772. As is explained above, a reasonable inference--indeed, the strongest inference--from the SAC's allegations is that even though Celebrex does not perform any better than traditional NSAIDs, and costs 10-times as much, physicians prescribed, patients consumed, and third-party payors purchased Celebrex *because* defendants falsely marketed it as superior to traditional NSAIDs.

Defendants' "learned intermediary doctrine" argument fails for the same reasons discussed above. As the SAC alleges that defendants deceived the physicians, as well as the consumers and third-party payors, the fact that a patient's physician prescribed Celebrex does not break the chain of causation; to the contrary, defendants' alleged deception of the physicians, causing the physicians to prescribe Celebrex, is an integral part of the causation chain.

//
//

7

**B.    Injury in Fact**

Next, defendants repeat a related argument that they made in their motion to dismiss the First Amended Complaints; namely, that plaintiffs have not suffered any injury because they received exactly what they for: a pain relief medication that did not cause any gastrointestinal or cardiovascular side effects.  This argument, however, ignores the central allegations in these consolidated class actions: plaintiffs purchased Celebrex instead of traditional NSAIDs because defendants misrepresented that Celebrex is better than traditional NSAIDs; in other words, plaintiffs could have and would have received exactly the same relief at a much lower cost but for defendants' deception.

Again, Desiano is right on point:

> But it is easy to see how Defendants' reasoning is flawed.  Consider, for example, a hypothetical in which a defendant drug company markets a "new," much more expensive drug claiming it is a great advancement (safer, more effective, etc. than metformin-the standard diabetes drug) when in fact the company is simply replicating the metformin formula and putting a new label on it.  In other words, the only difference between metformin and the "new" drug is the new name and the higher prescription price (paid almost entirely by the insurance company).  In that case, the "new" drug would be *exactly* as safe and effective as metformin, and thus there could be no injury to any of the insurance company's insured.  Nevertheless, the insurance companies would be able to claim-precisely as they do here-that the defendants engaged in a scheme to defraud it, and that the company suffered direct economic losses as a result.

Id. at 349-50.  Defendants' attempt to distinguish Desiano on the ground that the plaintiff-insurers alleged that if "they had not been deceived by defendants' misrepresentations they would not have purchased the drug," is unpersuasive; as is explained above, the Court disagrees with defendants' cramped reading of the complaint.  Plaintiffs allege that physicians prescribed Celebrex and insurers paid for it precisely because defendants falsely marketed it as having fewer gastrointestinal symptoms than the available over-the-counter NSAIDs.

The "failure to warn" cases cited by defendants are in apposite.  In Rivera v. Wyeth-Ayerst Labs., 283 F.3d 315 (5th Cir. 2002), Wyeth voluntarily removed Duract, a NSAID, from the market after a certain number of patients using the drug suffered from liver failure.  Id. at 317.  Plaintiffs filed a class action on behalf of all non-injured Duract purchasers

8

alleging that Wyeth had failed to adequately warn of the liver risk. The Fifth Circuit dismissed the action for lack of standing, that is, injury in fact: "Rivera's claim to injury runs something like this: Wyeth sold Duract; Rivera purchased and used Duract; Wyeth did not list enough warnings on Duract, and/or Duract was defective; other patients were injured by Duract; Rivera would like her money back." Id. at 319. The court held that these allegations were insufficient: "It is not enough that Wyeth may have violated a legal duty owed to some other patients; the patients must show that Wyeth violated a legal duty owed to them. What courts require . . . is that the injury be personal." Id. at 320 (internal quotation marks and citation omitted).

Rivera is inapplicable to plaintiffs' false advertising claims. Plaintiffs allege that they paid for Celebrex rather than the dramatically less expensive NSAIDs because defendants falsely claimed that Celebrex had fewer gastrointestinal side effects than the cheaper medications. Thus, plaintiffs allege a direct injury from the false statements: but for those statements the plaintiffs would have never purchased Celebrex. There was no allegation in Rivera that the plaintiff's physician would not have prescribed any medication, or would have prescribed a cheaper alternative, if the defendant had described the proper warning. Id. at 321; see also Heindel v. Pfizer Inc., 381 F.Supp.2d 364, 369, 381 (D.N.J. 2004) (granting summary judgment on plaintiffs' claim that defendants failed to warn of the cardiovascular risks of Celebrex and Vioxx on the ground that since none of the plaintiffs had been injured plaintiffs had not alleged injury in fact); Williams v. Purdue Pharma Co., 297 F.Supp.2d 171, 177 (D.D.C. 2003) (dismissing a deceptive advertising claim on "injury in fact" grounds because while the complaint "asserts that defendants engaged in false and misleading advertising, it does not plead that these defendants were in any way deceived–or even saw–any of that advertising.").

Defendants' theory, and the theory articulated in many of the cases they cite, is that the plaintiffs cannot state a claim because they were willing to pay a certain amount for an effective pain reliever that caused fewer gastrointestinal symptoms, and since they did not suffer from any such symptoms, plaintiffs received exactly what they paid for. The

1  distinction here, however, is the additional allegation that but for the misrepresentation that
2  Celebrex is better than the cheaper drugs on the market, plaintiffs could have received the
3  same benefit at a lower price.  None of the cases cited by defendants include such an
4  allegation.  Plaintiffs have sufficiently alleged causation for their state consumer protection
5  law claims.

## II. BREACH OF IMPLIED WARRANTY

Plaintiffs also make breach of implied warranty claims under each state's adoption of the Uniform Commercial Code ("UCC") and the applicable Louisiana law.  Defendants move to dismiss the warranty claims on the ground, among others, that plaintiffs have not alleged the manifestation of a defect.  The omission is fatal to plaintiffs' claims.

As the district court for the Southern District of New York recently explained in a nationwide class action involving digital cameras:

> Specifically, to prove their claim of breach of the implied warranty of merchantability, plaintiffs must show that the cameras "are [not] fit for the ordinary purposes for which such goods are used." U.C.C. § 2-314.  Under the laws of many (and perhaps all) of the states whose laws will apply to this claim (depending on the particular class members), cameras that do not malfunction do not meet this requirement.  See, e.g., Briehl v. GMC, 172 F.3d 623, 627-28 (8th Cir.1999) ("Since the Plaintiffs have failed to allege any manifest defect and their vehicles perform in a satisfactory manner, the District Court was correct when it dismissed the Plaintiffs' Original Complaint."); Jarman v. United Indus. Corp., 98 F.Supp.2d 757, 768 (S.D. Miss. 2000) ("[U]nless there is actually a failure in product performance, there is no basis at all for claiming that the plaintiff has been damaged in any way."); Chin v. Chrysler Corp., 182 F.R.D. 448, 460 (D.N.J.1998) ("In most jurisdictions, the courts recognize that unless a product actually manifests the alleged defect, no cause of action for breach of express or implied warranty or fraud is actionable."); In re Air Bag Prods. Liab. Litig., 7 F.Supp.2d 792, 805-06 (E.D. La. 1998) (holding that "allegation of manifest injury or defect" is a "central tenet[ ]" of an implied warranty claim); In re GMC Anti-Lock Brake Prods. Liab. Litig., 966 F.Supp. 1525, 1530 (E.D. Mo. 1997) ("Manifestation of the defect in the vehicle, however, is a prerequisite to recovery.").

In re Canon Cameras, 237 F.R.D. 357, 359 (S.D.N.Y. 2006).  In so holding, the court rejected the plaintiffs' argument that they need only show that "most or all of the cameras in issue contained 'defective' parts, i.e., parts that could have resulted in malfunctions" as inconsistent with the essential elements of a breach of implied warranty claim.  Id.

Here, the SAC likewise does not allege the "manifestation of the defect" because it does not include any allegation that any of the plaintiffs suffered cardiovascular or

10

gastrointestinal problems from taking Celebrex.  Plaintiffs have a false advertising claim, not a breach of implied warranty claim; that is, the drug worked as warranted, plaintiffs' complaint is that a cheaper drug would have worked as well.  Plaintiffs' citation to a reversed decision from the Texas Court of Appeals, Warner-Lambert Co. v. Mills, 117 S.W.3d 488 (Tex. App. 2003), *rev'd on other grounds,* 157 S.W.3d 424 (Tex. 2005), does not help plaintiffs.  As the Court of Appeals made clear on remand from the Texas Supreme Court, the plaintiffs alleged that the product–a cure for head lice–did not work for anyone; that is, the defect (did not cure head lice) manifested itself for all plaintiffs and all members of the class.  Warner-Lambert Co. v. Mills, 2005 WL 2088366 *1-2 (Tex. App. Aug. 31, 2005).  Here, in contrast, the defect (gastrointestinal and cardiovascular side effects) did not manifest for any of the plaintiffs.

As plaintiffs do not cite any law that suggests that a false advertising claim is transformed into a breach of an implied warranty claim even when the product works as promised, and as they do not contend that they could allege the manifestation of a defect if given leave to amend, defendants' motion to dismiss the warranty claims must be granted with prejudice.

## III.   UNJUST ENRICHMENT

Defendants also move to dismiss plaintiffs' claims for unjust enrichment.  The motion to dismiss must be denied because defendants have not proved as a matter of law that plaintiffs cannot state a claim.  Defendants rely primarily on In re Rezulin Products Liability Litigation, 392 F.Supp.2d 597 (S.D.N.Y. 2005).  There the plaintiff health benefit provider ("health provider") had contracted with a pharmacy benefit manager ("manager") to acquire drugs for the health provider's clients.  The health provider sued the manufacturer of the drug Rezulin for, among other things, unjust enrichment. The district court held that under New Jersey law a plaintiff "must show both that defendant received a benefit and that the retention of that benefit without payment would be unjust," id. at 619 (internal quotation marks and citation omitted), and that "[t]he benefit at issue must have been conferred on the defendant by the plaintiff, not by some third party."  Id.  On the defendant manufacturer's motion for

11

1  summary judgment, the district court held that the health provider could not succeed on its
2  claim because the evidence established that its relationship with the manufacturer was too
3  attenuated. The health provider contracted with the manager, not the drug manufacturer, to
4  provide prescription drug benefits to its members. It paid the manager, not the manufacturer,
5  and expected the manager, not the manufacturer, to provide services in exchange for that
6  payment. Id. at 620.

7  Here, defendants move to dismiss for failure to state a claim, not for summary
8  judgment. They do not point to any allegations in the complaint that suggest that any of the
9  named patient and third-party payor plaintiffs had as attenuated a relationship with
10 defendants as did the plaintiff in Rezulin. While the evidence may ultimately demonstrate
11 such an indirect relationship, such evidence, if it exists, is not presently before the Court.

12 Moreover, the allegation that Celebrex did not cause the plaintiffs any cardiovascular
13 or gastrointestinal problems does not mean that it would not be "unjust" to allow defendants
14 to retain all of their profits. The issue here, unlike the cases cited by defendants, is that
15 defendants sold Celebrex at a premium by falsely claiming that it is better than traditional
16 and far less expensive NSAIDs. Under such circumstances it might be unjust to allow
17 defendants to retain the premium. See Prohias, 485 F.Supp.2d at 1334 ("to state a claim for
18 unjust enrichment, a plaintiff must plead, in part, that the circumstances are such that it
19 would be inequitable for the defendant to retain the benefit conferred on it by the plaintiff.").
20 In any event, defendants have not met their burden of demonstrating that plaintiffs cannot
21 state an unjust enrichment claim as a matter of law.

## CONCLUSION

23 In deciding defendants' motion to dismiss for failure to state a claim, the Court must
24 resolve all inferences in favor of plaintiffs. A reasonable inference from the SAC's
25 allegations is that the consumer plaintiffs' physicians prescribed Celebrex, and the third-
26 party payors paid for it, because of defendants' widespread alleged misrepresentations about
27 its superiority to less expensive NSAIDs. Accordingly, defendants' motion to dismiss the
28 state consumer protection claims is DENIED as is the motion to dismiss the unjust

1 enrichment claims. As plaintiffs have not and cannot allege the manifestation of a defect,
2 defendants' motion to dismiss the breach of implied warranty claims is GRANTED without
3 leave to amend.

4 **IT IS SO ORDERED.**

5
6 Dated: July 10, 2007

                                               CHARLES R. BREYER
                                               UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

G:\CRBALL\2005\1699\Purchasers\order2dismissSAC_1_[1].wpd