Elizabeth J. Cabraser
ecabraser@lchb.com
Scott P. Nealey
snealey@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Plaintiffs' Liaison Counsel*

Steve W. Berman
*steve@hbsslaw.com*
Lisa Hasselman
*lisah@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Plaintiffs' Purchaser Counsel*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BEXTRA AND CELEBREX MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION | No. M:05-CV-01699-CRB<br><br>MDL No. 1699 |
| THIS RELATES TO:<br><br>ALL PURCHASER CASES | PLAINTIFFS' NOTICE OF MOTION, MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT<br><br>Date:   March 20, 2009<br>Time:   10:00 a.m.<br>Courtroom:  8, 19th Floor<br>Judge:  Honorable Charles R. Breyer |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on March 20, 2009, at 10:00 a.m. in the courtroom of The Honorable Charles R. Breyer, United States District Judge, 450 Golden Gate Avenue, San Francisco, CA 94102, or soon thereafter as the matter may be heard, Plaintiffs will move for preliminary approval of Class Action Settlement.

PLEASE TAKE FURTHER NOTICE that pending the Court's further review of the Class Notice and Settlement Agreement, all proceedings in the Action, other than proceedings pursuant to the Settlement, shall be stayed pending the hearing, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to determine the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved ("Final Approval Hearing"), and all Class Members shall be enjoined from commencing any other action based upon any of the claims at issue in the Action.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities submitted herewith, the Declaration of Steve W. Berman and all exhibits submitted herewith, including the Settlement Agreement and Release, and such representations by both Plaintiffs' and Defense counsel as may be made at the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

This case arises from allegations that Pfizer Inc. ("Pfizer") violated various State Unfair Competition Laws and the common law of unjust enrichment by unlawfully marketing Celebrex and Bextra as more safe and efficacious than their federal government approved labeling, injuring consumers and Third-Party Payors ("TPPs") (collectively, "Purchaser Plaintiffs") who paid a greater price for Bextra and/or Celebrex instead of less expansive alternative NSAIDs or no medication at all.  Plaintiffs have also filed a motion to amend the Master Complaints to allege violations of 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and the pendency of that motion to amend is, as we discuss below, a material factor supporting approval of this class settlement.

1   After more than three years of hard-fought litigation, including a series of motions to
2   dismiss, the parties now present the proposed Settlement Agreement and Release, attached as
3   Exhibit A to the Declaration of Steve W. Berman In Support of Plaintiffs' Motion For Approval of
4   Class Action Settlement ("Berman Decl."), seeking a global resolution of this case.  Prior to
5   reaching a resolution, the parties had exchanged written discovery requests, produced and reviewed
6   millions of pages of documents, took dozens of depositions, briefed dispositive motions, hired and
7   deposed experts, investigated applicable law, and engaged party representatives in numerous
8   meetings and conferences.  Following several mediation sessions with Hon. Fern Smith (Ret.) and
9   Professor Eric Green, both nationally-recognized mediators, and numerous direct negotiations
10  between counsel, Plaintiffs and Defendant have executed a Settlement Agreement and Release,
11  dated March 13, 2009, which is intended to resolve this litigation.  Under the terms of the
12  Settlement Agreement, subject to Court approval, Defendant will pay $89,000,000 ($85,000,000 in
13  cash and $4,000,000 for notice and claims administration) for the benefit of the Class certified by
14  the Court.  The Settlement constitutes a good and fair result, given the totality of the circumstances
15  facing Plaintiffs and the Class.  For the reasons set forth herein, the Plaintiffs respectfully submit
16  that the Court should preliminarily approve the parties' Settlement and schedule a Fairness Hearing
17  to consider final approval of the proposed settlement.  *See* Fed. R. Civ. P., Rule 23(c)(2) & (e).

18  The procedure for preliminary approval of a class action settlement includes setting
19  deadlines for providing notice, opting out of the Settlement Class, objecting to the Settlement
20  Agreement or the required award of attorneys' fees, costs and expenses and plaintiff incentive
21  awards, scheduling a Fairness Hearing and submitting claims.  A proposed schedule is set forth
22  below to provide the Court with a timeline for the various steps in the approval process.

| **EVENT** | **DATE** |
| --- | --- |
| Motion for Preliminary Approval | March 13, 2009 |
| Preliminary Approval Hearing | March 20, 2009 |
| Transfer of the Class Settlement Fund to the Escrow Account | Within 10 business days after Court enters Preliminary Approval Order |

PLAINTIFFS' NOTICE OF MOTION, MOTION AND
MEMORANDUM OF POINTS AND AUTHORITIES
M:05-CV-01699-CRB
001682-15 269072 V1

- 2 -

| | |
|---|---|
| Motion for Approval of Notice Program | March 27, 2009 |
| Court Approval of Notice Program | Date X |
| Notice and Claim Form posted on Internet | Date X + 30 days |
| Notice, Claim Form, and TPP Opt-Out Information Request mailed | Date X + 30 days |
| Commence publication of Short Form Notice | Date X + 60 days |
| Postmark deadline for Opt Outs | Date X + 120 days |
| Deadline for Claims Administrator to Provide list of opt outs and information provided | Date X + 125 days |
| Deadline for Issuing Subpoenas for Opt Out Information | Date X + 140 days |
| Deadline for Pfizer to terminate agreement | 15 days after receipt of opt-out data, no later than 30 days prior to final settlement hearing |
| Deadline for service of Objections upon the Court and designated counsel | Date X + 140 days |
| Deadline for responding to Objections | Date X + 150 days |
| Deadline for Filing Motion for Final Approval, Petition for Attorneys Fees and Reimbursement of Expenses, and Affidavit of Compliance with Notice Requirements | Date X + 160 days |
| Deadline for filing Notice of Appearance for Final Fairness Hearing | Date X + 160 days |
| Final Fairness Hearing | October 9, 2009 [Estimated date based on assumption Date X occurs prior to April 1, 2009] |
| Postmark deadline for filing Claims | November 9, 2009 [Estimated date based on assumption Date X occurs prior to April 1, 2009] |

## II.   PROCEDURAL HISTORY OF PURCHASER CLAIMS

Plaintiffs' initial master Celebrex and Bextra complaints (Dkt. #s 192 and 193), filed March 1, 2006, alleged claims for: (1) violation of section 1962(c) of RICO; (2) violation of state

1  consumer protection laws; (3) unjust enrichment; and (4) breach of implied warranty.  Defendant
2  filed three rounds of motions to dismiss against these claims.  The Court dismissed certain claims
3  as preempted by federal law and dismissed the implied warranty claims, but denied the motions
4  under state law as to the majority of consumer protection act claims and as to unjust enrichment.
5  (Dkt. #s 1498 and 1532).   Plaintiffs filed the operative Third Amended Master complaints on
6  July 24, 2007 (Dkt. #s 1586 and 1587).  On August 31, 2007, Defendant filed answers (Dkt. #s
7  1804 and 1805).

Plaintiffs voluntarily withdrew the RICO claims from the amended complaints, but now seek to amend the complaints into one Consolidated Amended Complaint with RICO allegations.

The parties engaged in a massive discovery effort.  In a coordinated effort with the personal injury Plaintiffs, Purchaser Plaintiffs undertook to review and analyze 3,450,002 multiple page documents produced by the Defendant.  Over 30 depositions of Defendant's current or former employees were taken.  Third parties were subpoenaed.  Plaintiffs responded to extensive written discovery requests, including the production of documents.  Such discovery resulted in a significant factual background for both sides.

Just prior to the deadline for filing Plaintiffs motion for Class Certification, Plaintiffs and Defendant agreed to stay the litigation and attempt to reach a mediated settlement.  Judge Fern Smith and Professor Eric Green agreed to serve as mediators.  After multiple rounds of mediation, the parties agreed to the current settlement and release.

### III.   DEFENDANT'S DENIAL OF WRONGDOING

Defendant asserts a variety of defenses and denies any wrongdoing or legal liability with regard to any and all of the claims asserted in this litigation.  Defendant nevertheless desires to settle the class action claims asserted on the terms and conditions set forth in the Settlement Agreement, for the purpose of avoiding the burden, expense, and uncertainty of trial, and for the purpose of putting to rest the controversies advanced by the litigation.

The present class action settlement was reached after prolonged arm's-length negotiations by experienced counsel on both sides.  The terms of this Settlement, as outlined below, are an

excellent result achieved by experienced Plaintiffs' and Defendant's counsel with the aid of experienced mediators, Hon. Fern Smith (Ret.) and Professor Eric Green.

## IV.     SUMMARY OF THE SETTLEMENT TERMS

**A.     Settlement Class.**

Plaintiffs propose the Third Amended Celebrex and Bextra Master Purchase Claims Complaints will be consolidated into one Consolidated Amended Complaint. The class includes purchase claims for both Celebrex and/or Bextra for both Third Party Payors ("TPPs") and individual consumers. The Parties agree and consent, for settlement purposes only, to the certification of the following Settlement Class as defined by its combined three subclasses (collectively, the "Settlement Class"):

> (1)     <u>Bextra or Bextra and Celebrex Consumer Subclass</u>.  All consumers located in the United States who purchased or paid for prescriptions of Bextra or both Bextra and Celebrex. Class members who purchased or paid for both Bextra and Celebrex will receive compensation based on their Bextra purchases only, in exchange for releasing their claims for both Bextra and Celebrex purchases.
>
> (2)     <u>Celebrex ONLY Consumer Subclass</u>.  All consumers located in the United States who purchased or paid for prescriptions of Celebrex, but not Bextra, prior to July 29, 2005.  This class and subclass does not include individuals who only purchased or paid for Celebrex after July 29, 2005.
>
> (3)     <u>Bextra and Celebrex Third Party Payor ("TPP") Subclass</u>. All TPPs, defined as all entities that:  (a) provide, sponsor or insure a healthcare plan, which includes prescription drug coverage to natural persons, and (b) purchase, pay or insure all or part of the cost of prescription drugs prescribed and dispensed to those persons pursuant to a health plan, located in the United States who reimbursed or paid for Bextra or both Bextra and/or Celebrex.  Class members who purchased or paid for both Bextra and Celebrex will receive compensation based on their Bextra purchases only, in exchange for releasing their claims for both Bextra and Celebrex purchases.

Excluded from the proposed Class are Defendant, any entity in which Defendant has a controlling interest or which have a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors and assigns; the judicial officers to whom this case is assigned; any member of the immediate families of excluded persons; governmental agencies and

those who resold Celebrex and/or Bextra; and any consumer who has released his/her claims against Pfizer related to Celebrex and/or Bextra.

Those entities that own or operate businesses referred to commonly as pharmacy benefit managers ("PBMs") and who as part of their business operation contract with ultimate TPPs of a prescription pharmaceutical benefit to perform certain services in the administration and management of that prescription pharmaceutical benefit for those ultimate TPPs are not class members under the Settlement Class definition.  The Settlement Class, specifically the Bextra and Celebrex TPP subclass, includes the ultimate TPPs providing the prescription pharmaceutical benefit and not the PBMs with which those TPPs contract to administer or manage that prescription benefit on behalf of the class members, unless such PBMs are the fiduciary of the TPPs or by contract assumed, in whole or in party, the insurance risk of that prescription pharmaceutical benefit during the class period.

**B.     The Settlement Amount.**

Pfizer will, within 10 business days of the Court's entry of a Preliminary Approval Order, provide a payment in the sum of $89,000,000.

**C.     Release.**

All class members shall release Pfizer for known and unknown claims related to Bextra and Celebrex, including all allegations that were not made but arise out of the same transactions or occurrences at issue in those complaints.

**D.     Pfizer's Right to Withdraw.**

Pfizer retains the right to withdraw from the Settlement Agreement (assuming the Court has granted preliminary approval) if TPPs opt out at a level exceeding a threshold defined by amounts paid for Bextra and Celebrex.  If Pfizer elects to terminate the Settlement Agreement, it must do so in writing no later than 30 days before the hearing on final approval.

## V. THE COURT SHOULD PRELIMINARILY APPROVE THE PROPOSED SETTLEMENT

### A. Standards For Approval.

The standards for preliminary approval under Fed. R. Civ. P. 23(e)(1)(A) are whether the proposed settlement is "within the range of possible approval." MANUAL FOR COMPLEX LITIGATION (THIRD ED.) § 30.41.

> The first step is a preliminary determination as to whether notice of the Settlement should be given to members of the class and a hearing scheduled at which evidence in support of and in opposition to the Settlement will be received. Before ordering that notice be sent out, the trial judge must be satisfied that the Settlement is within the range of possible approval. In essence, this determination is similar to a determination that there is "probable cause" to think the settlement is fair and reasonable.

*Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976). Similarly, *Colesberry v. Ruiz Food Prods.*, 2006 U.S. Dist. LEXIS 45024, at *17 (E.D. Cal. 2006), indicates that the role of the court should be an early assessment as to whether the settlement could be approved at a final fairness hearing, subject to input of the class members: "The court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement before conducting a full fairness hearing."

This negotiated settlement is well within the range of possible approval. Not only does it meet this threshold standard for preliminary approval, the Settlement is fair, reasonable and adequate when considered under the standards for final approval. As the Ninth Circuit has described the standards for final approval, district courts should approve class action settlements if the proposed agreement is "fair, reasonable, and adequate." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1275 (9th Cir. 1992). Making that determination, in turn, requires courts to weigh a variety of factors, including: (1) strength of plaintiffs' case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of proceedings; (6) experience and views of counsel; (7) presence of governmental participant; and (8) reaction of class members to settlement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As discussed below, evaluation of these factors supports preliminary approval of this settlement.

**B.     The Proposed Settlement Satisfies the Requirements for Approval.**

**1.     The Settlement negotiations occurred at arm's-length.**

Here, the Settlement Agreement was reached after prolonged and vigorous arm's-length negotiations by experienced counsel on both sides and with the aid of the Hon. Fern Smith (Ret.) and Professor Eric Green, both highly respected and experienced mediators. Berman Decl. at ¶ 3. The Settlement was negotiated over a period of months and was ultimately concluded with assistance of the mediators. Berman Decl. at ¶ 4. Because of the extensive bargaining process employed throughout the settlement process, there can be little doubt that the Settlement Agreement was the product of good-faith negotiations.

**2.     Plaintiffs' Counsel engaged in sufficient discovery to make an informed judgment concerning the merits of their claims.**

The stage of the proceedings and the amount of discovery completed at the time a settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness. "'Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (internal citation omitted)).

Plaintiffs' counsel here certainly had an appreciation of the merits before reaching the proposed Settlement. Counsel have been actively engaged in this litigation for over three years and have diligently and aggressively pursued the necessary discovery. Plaintiffs' counsel reviewed millions of pages of documents produced by Defendant and third-parties. Berman Decl. at ¶ 5. Plaintiffs also deposed over two dozen witnesses comprised of former or current Defendant employees, and third parties. Berman Decl. at ¶ 6. Plaintiffs' counsel further engaged four expert testifying witnesses: Dr. John Abramson; Dr. Raymond S. Hartman; Joel W. Hay, Ph.D.; and Meredith Rosenthal, Ph.D. Berman Decl. at ¶ 7.

As the Court is aware, the parties also engaged in extensive motion practice. Berman Decl. at ¶ 8. Significantly, despite having a factually well-developed case, both sides still face significant

uncertainties because of the novelty of the factual and legal issues. This settlement puts an end to those significant risks and uncertainties.

For example, while Plaintiffs disagree with its assertions, Pfizer continues to argue that Plaintiffs cannot satisfy their burden of proof at trial because of, among other things: (1) payors continue to pay for Celebrex despite publicity regarding its potential risks and benefits; (2) that a motion to certify a nationwide class would be denied because of, *inter alia*, a predominance of individual issues related to causation and actual injury; (3) the FDA did not specifically denounce all allegedly false advertisements; (4) Defendant has scientific evidence that the claims made regarding Celebrex and Bextra were/are true; (5) Plaintiffs would have purchased another highly priced, branded pain reliever if Celebrex or Bextra was not available; and (6) doctors prescribed Celebrex and Bextra for reasons other than Defendant's alleged false advertisements.

Moreover, even if Plaintiffs were able to obtain a favorable judgment from this Court and received the full relief that they are seeking, Plaintiffs recognize that there is a risk of a reversal on appeal. The proposed settlement eliminates these risks. Absent a settlement, and even if Plaintiffs were to prevail at trial and on appeal, the Class might not receive any relief for years. Consequently, the circumstances and attendant risks favor settlement here. *See Hanlon*, 150 F.3d at 1026.

**3.     The proponents of the Settlement are highly experienced class action litigators.**

Plaintiffs' counsel have considerable experience in handling complex class actions in general, and prescription drug and consumer class actions in particular. Given this experience, Plaintiffs' counsel have developed in-depth knowledge of the applicable law. For purposes of this preliminary approval motion, experienced and competent counsel believe that the proposed settlement, in the circumstances of this case, is fair, reasonable and adequate. This factor heavily favors preliminary approval.

**4.     The Settlement is within the range of possible approval.**

    **a.     The Amount of Recovery.**

An all cash settlement of $89,000,000 represents a significant recovery under the specific circumstances of this case. The settlement amount is similar to and in multiple instances, greater

MEMORANDUM OF POINTS AND AUTHORITIES
M:05-CV-01699-CRB
001682-15  269072 V1

- 9 -

than, settlement amounts for other nationwide pharmaceutical purchaser litigation. *See In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 415-430 (E.D.N.Y. 2008).

### b.  Cash Settlement Amount.

The Settlement Agreement provides for cash reimbursement for members of the Class out of a portion of the Settlement Amount. This amount represents more than 4% of Pfizers' relevant sales during the Class Period, which is an excellent result. *See*, *e.g.*, *Meijer Inc. v. 3M*, Civ. A. No. 04-5871, 2006 WL 2382718, *20 (E.D. Pa. Aug. 14, 2006) (settlement represented 2% of settling defendant's sales to class members); *In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 627 (E.D. Pa. 2004) (settlements represented 2.0% and 1.62% of settling defendant's sales to class members); *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2004 WL 1068807 (E.D. Pa. May 11, 2004) (two settlements represented a total of 2% of sales).

## VI.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court preliminarily approve the proposed Settlement and schedule a Fairness Hearing to consider final approval of the proposed settlement.

DATED: March 13, 2009　　　　　　　　　　　Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  /s/ Steve W. Berman
　　Steve W. Berman
steve@hbsslaw.com
Lisa Hasselman
lisah@hbsslaw.com
1301 Fifth Avenue, Suite 2900
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

| | |
|---|---|
| 1 | Thomas M. Sobol |
| 2 | David S. Nalven, DN-2374<br>HAGENS BERMAN SOBOL SHAPIRO LLP |
| 3 | One Main Street, Fourth Floor<br>Cambridge, MA  02142 |
| 4 | Telephone:  617-482-3700<br>Facsimile:  (617) 482-3003 |
| 5 | Frank M. Pitre |
| 6 | COTCHETT, PITRE, & McCARTHY<br>San Francisco Airport Officer Center |
| 7 | 840 Malcolm Road, Suite 200<br>Burlingame, CA  94010 |
| 8 | Telephone:  (650) 697-6000<br>Facsimile:  (650) 697-0577 |
| 9 | James R. Dugan, II, T.A. (LSBA No. 24785) |
| 10 | Douglas R. Plymale (LSBA No. 28409)<br>Stephen B. Murray, Jr. (LSBA No. 23877) |
| 11 | Stephen B. Murray, Sr. (LSBA No. 9858)<br>THE MURRAY LAW FIRM, PLC |
| 12 | 650 Poydras Street, Suite 2150<br>New Orleans, LA  70130 |
| 13 | Telephone:  (504) 648-0180<br>Facsimile:  (504) 648-0181 |
| 14 | Art Sadin |
| 15 | SADIN LAW FIRM, P.C.<br>1104 S. Friendswood Drive, Suite A |
| 16 | Friendswood, TX  77546<br>Telephone:  (281) 648-7711 |
| 17 | Facsimile:  (281) 648-7799 |
| 18 | Lewis Kahn<br>KAHN GUATHIER LAW GROUP, L.L.C. |
| 19 | 650 Poydras Street, Suite 2150<br>New Orleans, LA  70130 |
| 20 | Telephone:  (504) 455-1400<br>Facsimile:  (504) 455-1498 |
| 21 | Christopher A. Seeger |
| 22 | SEEGER WEISS, LLP<br>One William Street |
| 23 | New York, NY  10004-2502<br>Telephone:  (212) 584-0700 |
| 24 | Facsimile:  (212) 584-0799 |
| 25 | Don Barrett<br>BARRETT LAW OFFICES |
| 26 | 450 Court Square<br>Lexington, MS  39095-0987 |
| 27 | Telephone:  (662) 834-2376<br>Facsimile:  (662) 834-2628 |
| 28 | |

PLAINTIFFS' NOTICE OF MOTION, MOTION AND
MEMORANDUM OF POINTS AND AUTHORITIES
M:05-CV-01699-CRB
001682-15 269072 V1

- 11 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Leonard Barrack
Robert Hoffman
Jeffrey Gittleman
Chad Carder
BARRACK, RODOS & BACINE
2001 Market Street
3300 Two Commerce Square
Philadelphia, PA  19103
Telephone:  (215) 963-0600
Facsimile:  (215) 963-0838

Lance Harke
Howard M. Bushman
HARKE & CLASBY LLP
155 South Miami Avenue, Suite 600
Miami, Florida  33130
Telephone:  (305) 536-8219
Facsimile:  (305) 536-8229

Ann K. Mandt (P46314)
CHARFOOS & CHRISTENSEN, P.C.
5510 Woodward Ave.
Detroit, MI  48202
Telephone:  (313) 875-8080
Facsimile:  (313) 875-8522

Jason J. Thompson
SOMMERS SCHWARTZ P.C.
2000 Town Center, Suite 900
Southfield, MI  48075-1100
JThompson@sommerspc.com
Business         (248) 436-8448
Fax      (248) 436-8453

Ronald S. Goldser
ZIMMERMAN REED, PLLP
651 Nicollet Mall, Suite 501
Minneapolis, MN  55402
Telephone:  (612) 341-0400
Facsimile:  (612) 341-0844

Jeffrey S. Goddess
ROSENTHAL, MONHAIT, GROSS & GODDESS
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE  19899-1070
Telephone:  (302) 656-4433
Facsimile:  (302) 658-7567

PLAINTIFFS' NOTICE OF MOTION, MOTION AND
MEMORANDUM OF POINTS AND AUTHORITIES
M:05-CV-01699-CRB
001682-15  269072 V1

- 12 -

| | |
|---|---|
| 1 | Richard L. Horwitz |
| | POTTER ANDERSON & CORROON, LLP |
| 2 | 1313 N. Market St., Hercules Plaza, 6th Floor |
| | P.O. Box 951 |
| 3 | Wilmington, DE  19899-0951 |
| | Telephone:  (302) 984-6000 |
| 4 | Facsimile:  (302) 658-1192 |

Richard L. Horwitz
POTTER ANDERSON & CORROON, LLP
1313 N. Market St., Hercules Plaza, 6th Floor
P.O. Box 951
Wilmington, DE  19899-0951
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192

Garve W. Ivey, Jr.
Barry A. Ragsdale
William Adair, Jr.
IVEY & RAGSDALE
315 West 19th Street
P. O. Box 1349
Jasper, AL  35502-1349
Telephone:  (205) 221-4644
Facsimile:  (205) 252-8484

Jonathan B. Lowe
LOWE MOBLEY & LOWE
P. O. Box 576
Haleyville, AL  35575-0576
Telephone:  (205) 486-5296
Facsimile:  (205) 486-4531

Jeffrey L. Kodroff
SPECTOR, ROSEMAN & KODROFF, PC
1818 Market Street, Suite 2500
Philadelphia, PA  19106
Telephone:  (215) 496-0300
Facsimile:  (215) 496-6611

Christopher A. Neal
CHRISTOPHER A. NEAL & ASSOCIATES, P.C.
300 Harwood
Bedford, TX  76021
Telephone:  (817) 545-6100
Facsimile:  (817) 589-2530

Thomas A. Zimmerman, Jr.
ZIMMERMAN & ASSOCIATES, P.C.
100 W. Monroe, Suite 1300
Chicago, IL  60603
Telephone:  (312) 440-0020

M. Scott Barrett
Dennis T. Trainor
BARRETT & ASSOCIATES
30 N. LaSalle Street, Suite 3900
Chicago, IL  60602
Telephone:  (312) 269-0600

PLAINTIFFS' NOTICE OF MOTION, MOTION AND
MEMORANDUM OF POINTS AND AUTHORITIES
M:05-CV-01699-CRB
001682-15 269072 V1

- 13 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

William N. Riley
Jaime R. Kendall
PRICE WAICUKAUSKI & RILEY, LLC
301 Massachusetts Avenue
Indianapolis, IN 46204
Telephone: (317) 633-8787
Facsimile: (317) 633-8797

*Attorneys for the Celebrex and Bextra Purchaser Plaintiffs*

PLAINTIFFS' NOTICE OF MOTION, MOTION AND
MEMORANDUM OF POINTS AND AUTHORITIES
M:05-CV-01699-CRB
001682-15  269072 V1

- 14 -