IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: BEXTRA AND CELEBREX CRB ) | Master Docket No.: M:05-01699- |
| MARKETING, SALES PRACTICES ) | MDL No.: 1699 |
| AND PRODUCTS LIABILITY ) | |
| LITIGATION ) | |
| _____ ) | |
| THIS DOCUMENT RELATES TO: ) | |
| ALL PURCHASER CASES ) | |

### THE BLUE CROSS BLUE SHIELD PLANS' COMMENTS ON AND OBJECTIONS TO THE PROPOSED SETTLEMENT AGREEMENT AND RELEASE

**COME NOW** Blue Cross Blue Shield of Alabama and Blue Cross Blue Shield of Michigan, (the "BCBS Plans"), by and through their undersigned counsel of record, and comment on and object as follows to the Proposed Settlement Agreement and Release[1] in this matter.

### SUMMARY OF ARGUMENT

Class Plaintiffs' claims in this case arise under RICO, state consumer fraud laws, and the common law of unjust enrichment.[2] The release in this case,

---

[1] *In re Bextra and Celebrex Marketing, Sales Practices, and Product Liab. Litig.,* Case No. 05-CV-01669, MDL 1699, Dkt. No. 2739, Declaration of Steve W. Berman in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, Exhibit 1-- Settlement Agreement and Release (N.D.Cal. March 13, 2009), (hereinafter "Settlement Agreement and Release.")

[2] Consolidated Amended Purchase Claims Master Complaint and Memorandum and Points of Authority, Dkt. # 2740.

however, in consideration of the payment of $89 million, releases class members' subrogation claims, as well as these claims.

The settlement amount in this case is not adequate to cover subrogation claims. Class member Blue Cross and Blue Shield of Alabama alone paid $28,488,816.000 for medical services for treatment of heart attacks, strokes, and any related diagnosis occurring after their members' ingestion of Bextra and Celebrex. This amount represents only a portion of what all private third party payors potentially paid for subrogation claims, making the current $89 million proposed settlement inadequate.

## PARTIES AND BACKGROUND

The BCBS Plans are not-for-profit Blue Cross and Blue Shield entities headquartered, respectively, in Birmingham, Alabama, and Detroit, Michigan. The BCBS Plans provide health care financing benefits, including prescription drug coverage, to approximately eight million people throughout the United States. The BCBS Plans have duties to pursue cost containment measures in order to provide affordable health care benefits to their employer groups and insureds. To this end, they have been and are actively involved in pharmaceutical litigation, both as individual litigants, and as Third-Party Payor ("TPP") class representatives.

One of the cost containment duties the BCBS Plans are charged with is the pursuit of subrogation claims. "Subrogation" is a term of art, and includes both a claim against a member who recovers a settlement as a result of an injury, often termed "reimbursement," and a claim against the tortfeasor standing in the shoes of the member, termed "subrogation." The core damages of a personal injury claim lie in the reasonable and necessary costs of treatment of the injury resulting from the wrongdoing of another. Under the common law[3], the law of ERISA[4], and general equitable principles[5], subrogation claims shift the cost of those payments from the wrongdoer to the party which actually paid for the injury.

The BCBS Plans are TPP Class Members, within the class definition preliminarily approved by this Court:

> (a) A party to a contract, issuer of a policy, or sponsor of a plan; and,
>
> (b) At risk, under such contract, policy, or plan, to pay or reimburse all or part of the cost of prescription drugs dispensed to covered natural persons. TPPs

---

[3] *Ex Parte State Farm & Cas. Co.*, 764 So. 2d 543 (Ala. 2000); *Hartford Acc. & Indem. Co. v. Used Car Factory, Inc.*, 461 Mich. 210, 600 N.W. 2d 630 (Mich. 1999).

[4] *Great-West Life & Annuity Co. v. Knudson*, 534 U.S. 204, 122 S. Ct. 708 (2002); *Sereboff v. Mid-Atlantic Medical Serv., Inc.*, 547 U.S. 356, 126 S. Ct. 1869 (2006); *FMC v. Holliday*, 498 U.S. 52, 111 S. Ct. 403 (1990); *Cagle v. Bruner*, 112 F.3d 1510 (11th Cir. 1997); *Marshall v. Employers Health Ins. Co.*, 1997 WL 809997 (6th Cir. 1997).

[5] *Hercules Inc. v. Pages*, 814 S. Supp. 79 (M.D. Fla. 1993).

>include insurance companies, union health and welfare benefit plans and self-insured employers. Entities with self-funded plans that contract with a health insurance company or other entity to serve as a third-party claims administrator to administer their prescription drug benefits qualify as TPPs. Private plans that cover government employees and/or retirees are also included.

Order, Case No. 05-CV-01699, Dkt. #2926 (March 23, 2009).

The BCBS Plans have paid many millions of dollars for the cost of the drugs Bextra and Celebrex, as prescribed for their beneficiaries, members and insureds during the Class Period. Recognizing that the class plaintiffs had failed to adequately represent their interests by bringing subrogation claims in their Complaint(s), the BCBS Plans have asserted subrogation claims in their own Amended Complaint filed on January 7, 2009. The BCBS Plans brought claims against the Defendants for restitution and other equitable relief while standing in the shoes of their members. The BCBS Plans appeared through their counsel of record at the preliminary approval hearing in this action. Since the date of that hearing, the BCBS Plans have propounded informal and formal discovery on the Defendants and Class Plaintiffs, and have sought to resolve their concerns regarding the consideration for the release of their subrogation claims.

## ARGUMENT

The Proposed Settlement Agreement and Release provides:

"Released Claims" means any and all claims, demands, action, suits, causes of action, damages whenever incurred and liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, in law or equity, that any Class Releasor who has not timely and validly excluded itself from the Settlement Class, whether or not they object to this Agreement or make a claim upon or participate in the Settlement Fund, ever had, now has or hereafter can, shall, or may have, directly, indirectly; representatively, derivatively, or in any capacity, arising out of any conduct, events, or transaction alleged or that could have been alleged in **any litigation relating to the purchase, price, payment, reimbursement, use, prescription, marketing, manufacture, distribution, sale, promotion, research, design, development, supply and/or ingestion of Celebrex and/or Bextra during the Class Period. "Released Claims" include all state and federal statutory and common law claims of any sort.** "Released Claims" shall not include any claim against any person or entity that is not a Released Party, any claim for breach of this Agreement, or any claim between any Settlement Class Member and any Released Party that is unrelated to the allegations set forth in the Class Complaints.

*See* Settlement Agreement and Release, pg. 7 (emphasis supplied).

This definition releases any subrogation claims the BCBS Plans and the class of TPPs might have against the Released Parties regarding treatment for physical injuries paid by the Plans on behalf of their members as a result of their

ingestion of Celebrex and/or Bextra. The physical injuries suffered by these members, include, but are not limited to, doctor's visits, hospitalizations, and other necessary and related medical care, resulting from the members' ingestion of Celebrex and/or Bextra. Such a claim is clearly "derivative .. litigation relating to the payment, reimbursement, use, prescription, marketing, manufacture, distribution, sale, promotion, research, design, development, supply and/or ingestion of Bextra and/or Celebrex during the Class Period." Subrogation is a "common law cause[] of action." Further, class counsel have confirmed to counsel for the BCBS Plans that subrogation claims are included in the scope of this Release.[6]

The gross amount of the present settlement – $89 Million – is simply inadequate to resolve the large subrogation claims of the Class, in addition to the RICO, state consumer fraud, and unjust enrichment purchase claims originally brought by the class plaintiffs. Blue Cross Blue Shield of Alabama alone paid a total of $28,488,816.00 for claims related to the above-mentioned injuries subsequent to Bextra and Celebrex ingestion. Projected out for the class period, this amount would be $1,450,357,709.00 for all private health care insurers in the United States. This amount far exceeds the current settlement. *See* Exhibit 2,

---

[6]*See* Exhibit 1, Declaration of Kimberly R. West, pg. 2.

Declaration of Stephen J. Kogut, PhD, MBA, RPh and Exhibit 3, Curriculum Vitae of Stephen J. Kogut.[7]  While it is true that class settlements are rarely found to be inadequate for reasons of consideration alone, the gross disparity here supports such a result.

Further, in this case, the fact of the matter is that class counsel did not consider, much less value, the subrogation claims in the settlement of this matter. [8] The TPP class is thus now being asked to release subrogation claims for no consideration.  While the BCBS Plans maintain reimbursement rights against its members, they still have subrogation claims against defendant Pfizer.  The settlement does not require Pfizer to provide the TPP's with information necessary to protect its reimbursement rights, much less provide money to pay for release of the subrogation claims. As explained above, the proposed settlement is not adequate to cover subrogation claims of the TPP class.

## CONCLUSION

For these reasons, the BCBS Plans respectfully submit that this Court should refuse to

---

[7]The BCBS Plans note that there is a wealth of information available regarding the actual value of medical expenses in personal injury settlements -- the personal injury MDL cases.  This information is not, however, a matter of public record.  The BCBS Plans have sought this information in informal and formal discovery.  To date, the Settling Purchaser Plaintiffs' have objected to the request and refused to produce this information.

[8]Exhibit 2, Declaration of Kimberly R. West, pg. 2.

approve the present Settlement Agreement to the extent that subrogation claims are released without adequate consideration.

/s/ Kimberly R. West
Kimberly R. West
Audrey R. Channell
WALLACE, JORDAN, RATLIFF &
BRANDT, LLC
P.O. Box 530910
Birmingham, Alabama 35253
TELEPHONE: (205) 874-0352
FACSIMILE: (205) 871-7534
kwest@wallacejordan.com
achannell@wallacejordan.com


/s/ Pamela B. Slate
Pamela B. Slate
SLATE KENNEDY LLC
Financial Center
One Commerce Street, Suite 850
P.O. Box 388 (36101)
Montgomery, AL 36104
Telephone: (334) 262-3300
Fax: (334) 262-3301
pslate@slatekennedy.com

**Attorneys for Blue Cross Blue Shield of Alabama and Blue Cross Blue Shield of Michigan**

## CERTIFICATE OF SERVICE

  I hereby certify that I have served a copy of the above document on the following counsel, by electronic filing with CM/ECEF this the 20th day of July , 2009.

Lead Class Settlement Counsel:
Steve W. Berman, Esq
Hagens Berman Sobol Shapiro, LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101

Counsel for Pfizer:
Loren Brown, Esq.
DLA Piper
1251 Avenue of the Americas
New York, NY 10020

          */s/ Kimberly R. West*
          Of Counsel