UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BEXTRA AND CELEBREX MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION ) ) ) ) | No. M:05-CV-01699-CRB<br><br>MDL No. 1699 |
| THIS RELATES TO:<br><br>ALL PURCHASER CASES ) ) ) ) ) | [SECOND REVISED P~~ROPOSED~~]<br>ORDER AND FINAL JUDGMENT |

This Court, having considered: (a) the Settlement Agreement and Release, dated March 13, 2009 (the "Settlement Agreement" or the "Settlement"),[1] including all Exhibits thereto; (b) the Motion(s) for Approval of Class Settlement filed by the parties on August 14, 2009, and all of the supporting material submitted in conjunction with such motion(s); and (c) plaintiffs' counsel's Motion for Approval of an Award of Attorneys' Fees and Memorandum in Support thereof; and having held a Final Approval Hearing regarding the Settlement on September 25, 2009, and having considered the record of these proceedings, the representations, argument, and recommendation of counsel for the moving parties, and the requirements of law,

**IT IS HEREBY <u>ORDERED</u>, <u>ADJUDGED</u> AND <u>DECREED</u> that:**

1. The Court has jurisdiction over the subject matter and parties to this proceeding pursuant to 28 U.S.C. § 1331.

2. Venue is proper in this district.

---

[1] Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meaning in this Order.

3. The Court finds that the Rule 23 factors are present and that certification of the following subclasses is appropriate under Rule 23(b)(3) of the Federal Rules of Civil Procedure, and hereby certifies the classes for settlement purposes only and without prejudice to any other parties to the litigation.

(A) <u>Bextra or Bextra and Celebrex Consumer Subclass</u>. All consumers located in the United States who purchased or paid for prescriptions of Bextra or both Bextra and Celebrex. Class members who purchased or paid for both Bextra and Celebrex will receive compensation based on their Bextra purchases only, in exchange for releasing their claims for both Bextra and Celebrex purchases.

(B) <u>Celebrex ONLY Consumer Subclass</u>. All consumers located in the United States who purchased or paid for prescriptions of Celebrex, but not Bextra, prior to July 29, 2005. This class and subclass does not include individuals who only purchased or paid for Celebrex after July 29, 2005.

(C) <u>Bextra and Celebrex Third Party Payor ("TPP") Subclass</u>. All TPPs, defined as all entities that: (a) provide, sponsor or insure a healthcare plan, which includes prescription drug coverage to natural persons, and (b) purchase, pay or insure all or part of the cost of prescription drugs prescribed and dispensed to those persons pursuant to a health plan, located in the United States who reimbursed or paid for Bextra and/or Celebrex. Class members who purchased or paid for both Bextra and Celebrex will receive compensation based on their Bextra purchases only, in exchange for releasing their claims for both Bextra and Celebrex purchases.

4. Excluded from the proposed Class are Defendants Pfizer Inc., Pharmacia Corporation and G.D. Searle LLC ("Pfizer" or "Defendant"), any entity in which Defendant have a controlling interest or which have a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors and assigns; the judicial officers to whom this case is assigned; any member of the immediate families of excluded persons; governmental agencies and those who resold Celebrex and/or Bextra, and any consumer who has released his/her claims against Pfizer related to Celebrex and/or Bextra.

5. Those entities that own or operate businesses referred to commonly as pharmacy benefit managers ("PBMs") or third party administrators ("TPAs") and who as part of their business operation contract with ultimate TPPs of a prescription pharmaceutical benefit to perform certain services in the administration and management of that prescription pharmaceutical benefit

for those ultimate TPPs are not class members under the Settlement Class definition. The Settlement Class, specifically the Bextra and Celebrex TPP subclass, includes the ultimate TPPs providing the prescription pharmaceutical benefit and not the PBMs or TPAs with which those TPPs contract to administer or manage that prescription benefit on behalf of the class members, unless such PBMs or TPAs are the fiduciary of the TPPs or by contract assumed, in whole or in party, the insurance risk of that prescription pharmaceutical benefit during the class period.

6. Specifically, the Court finds that the Classes as defined in Paragraph 3 satisfies Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure for settlement purposes:

**Rule 23(a)**

(A) <u>Numerosity</u>: Numerosity is established in that the size of the subclasses are sufficiently large to make joinder impracticable, given the relevant circumstances. The subclasses encompass thousands of third party payors (welfare funds, self-insured employers, for-profit and not-for-profit health insurers that provide prescription drug benefits) and millions of individuals that have asserted claims or potential claims against the settling defendant. Thus, the Rule 23(a)(1) numerosity requirement has been met.

(B) <u>Commonality</u>: Generally, the commonality requirement is easily met, provided that at least one common question of law or fact exists. Here, the claims hinge on common questions and the elements of the claims would be established by common class-wide proof. The numerous common factual and legal questions to be decided include, but are not limited to: (a) whether the Defendant's marketing for Celebrex and Bextra was misleading; (b) whether the Defendant's marketing of Celebrex and Bextra contradicted their Food and Drug Administration approved labeling; (c) whether Pfizer formed enterprises for the purpose of carrying out the scheme alleged in the complaint; and (d) whether Pfizer used the U.S. mails and interstate wire facilities to carry out the scheme alleged in the complaint. Accordingly, Rule 23(a)(2) is satisfied.

(C) <u>Typicality</u>: The claims of the class representatives arise from the same course of conduct and share the same legal theory as the claims of the members of the proposed classes. Furthermore, the class representatives will advance the interests of all class members. Accordingly, the class representatives' claims are typical of those of the Settlement Class, satisfying Rule 23(a)(3).

(D) <u>Adequacy</u>: The class representatives of the subclasses assert claims that are representative of the claims of each entire subclass. As such, even though the class representatives' claims may not be identical to every claim of every putative member of each class, the class representatives can adequately represent the proposed class.

> The adequacy factor also considers Class Counsel. Class Counsel regularly engages in complex litigation similar to the present case and has dedicated substantial resources to the prosecution of this matter. The adequacy requirement under Rule 23(a)(4) is satisfied.
>
> **Rule 23 (b)(3)**
>
> (E) <u>Predominance of Common Issues:</u> The members of the classes commonly assert that Pfizer's policies and practices caused Celebrex and Bextra to be marketed with claims that they were superior to less expensive alternatives, which in turn caused all members of the classes to pay a greater price for those drugs instead of less expensive alternatives or no medication at all. In the context of the Settlement, those issues predominate over any individual questions, favoring class treatment.
>
> (F) <u>Superiority of the Class Action Mechanism:</u> The class action mechanism is ideally suited for treatment of the settlement of this action. Class certification promotes efficiency and uniformity of judgment, among other benefits, because the members of the classes will not be forced to separately pursue claims or execute settlements in various courts around the country.

7. In the interest of clarity, the Court reiterates that it makes the findings set forth in paragraph 6 regarding certification of the classes only for settlement purposes.

8. The Court finds that the relief provided through the Settlement Agreement is enforceable and binding on the Releasers and satisfies the due process requirements of Rule 23(b)(3) because this Court, pursuant to its plenary powers under Rule 23(c)(2) and 23(d)(1), provided notice to the Releasers of the Settlement and of each Releaser's right to exclude itself from the class certified in the Court's March 23, 2009, Order.

9. The Court reconfirms the appointment of the class representatives.

10. The Court approves the Settlement Agreement, on file with the Court as Exhibit A to the Declaration of Steve Berman in support of the Motion for Preliminary Approval, as being fair, adequate, and reasonable and in the best interests of the Class, satisfying Rule 23(e) and the fairness and adequacy requirements of this Circuit. In particular, the Court finds that:

> To determine whether the proposed settlement is fair, reasonable, and adequate, the Court balances the continuing risks of litigation against the benefits afforded to Class members and the immediacy and certainty of a substantial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).
>
> The stage of the proceedings is one of the factors that courts consider in determining the fairness, reasonableness and adequacy of a

settlement. *Hanlon*, 150 F.3d at 1026. There has been substantial discovery and motion practice in this litigation, which has enabled the parties and the court to adequately determine the fairness, reasonableness and adequacy this settlement.

The stage of the proceedings and the amount of discovery completed at the time a settlement is reached is relevant to the parties' knowledge of the strengths and weaknesses of the various claims in the case, and consequently affects the determination of the settlement's fairness. "'Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 235 (3d Cir. 2001) (internal citation omitted)).

Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class. *See Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988). *See also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness).

The immediacy and certainty of a recovery is a factor for the Court to balance in determining whether the proposed settlement is fair, adequate and reasonable. *See*, *e.g.*, *Mego Fin.*, 213 F.3d at 458. Therefore, the present settlement proposal must be balanced against the expense and likelihood of achieving a more favorable result at a later point in the litigation or at trial.

(1) Comparison of Settlement With Likely Result of Litigation:

Although plaintiffs' counsel have consistently asserted their confidence in the strength of their case, this is complex litigation for which the outcome is uncertain and unpredictable. In order to succeed on the merits, plaintiffs would need to prevail on several complex and hotly disputed legal and factual issues. The relief contemplated in the Settlement Agreement is fair, adequate, and reasonable. This result, coupled with the uncertainty of protracted litigation and trial, weighs heavily in favor of approval of the Settlement.

(2) Reaction of Class Members to the Settlement:

As a result of the extensive notice program ordered by the Court, there have been 5 objections filed with the Court. The overall reaction to the settlement has been positive. Given the size of the classes, the number of objections and opt-outs is small.

(3) State of the Litigation:

Plaintiffs' counsel here certainly had an appreciation of the merits before reaching the proposed Settlement. Counsel have been actively engaged in this litigation for over three years and have diligently and aggressively pursued the necessary discovery. Plaintiffs' counsel reviewed millions of pages of documents produced by Defendant and

third-parties. Plaintiffs also deposed over two dozen witnesses comprised of former or current Defendant employees, and third parties. Plaintiffs' counsel further engaged four expert testifying witnesses.

As the Court is aware, the parties also engaged in extensive motion practice. Significantly, despite having a factually well-developed case, both sides still face significant uncertainties because of the novelty of the factual and legal issues. This settlement puts an end to those significant risks and uncertainties. Class Settlement Counsel has done sufficient work and generated sufficient information to permit an informed assessment of the prospects for success in this litigation. Although extensive discovery has been conducted to ensure that the settlement is fair, adequate, and reasonable, there would remain (absent settlement) substantial litigation ahead, including trial preparation and the trial itself, which would require millions of dollars in additional fees and expenses. Given that the parties have undertaken comprehensive discovery to ensure the fairness, reasonableness, and adequacy of the Settlement, expenditure of such resources would be wasteful and unnecessary. The state of the litigation therefore weighs in favor of approval of the Settlement.

(4) Quality of Counsel:

Class Counsel are very well-qualified and experienced. Class Counsel regularly engage in complex litigation similar to the present case and have dedicated substantial resources to the prosecution of this matter. The experience and skill of all counsel involved weighs in favor of final approval of the Settlement.

(5) Conduct of Negotiations:

Class Counsel and Pfizer's Counsel have engaged in extensive, arms length negotiations assisted by experienced mediators, Retired Judge Fern Smith and Professor Eric Green. The complexity and duration of these negotiations weighs in favor of final approval of the Settlement.

(6) Case Prospects, Including Risk, Complexity, Expense, and Duration:

This case has the potential to impose enormous litigation costs on all the parties. Indeed, although the ultimate result of a trial cannot be foreseen, absent a settlement, an expensive, complex and time-consuming process is assured. In light of the high stakes involved, a lengthy and costly appeal is certain to follow any trial regardless of the outcome. Thus, the complexity, expense and likely duration of the litigation weigh heavily in favor of final approval of the Settlement.

11. After considering the objections filed with the Court, the Court holds that they do not present sufficient basis on which to find this settlement unfair, inadequate or unreasonable. The objections are overruled.

12. The Court holds that the Settlement Notices and Notice Program as carried out satisfy the requirements of Rule 23(e) and due process. This Court has previously held that the Settlement Notices and Notice Program are the best practicable method under the circumstances for providing notice to the classes. The Court hereby extends the Claims Deadline previously set for October 23, 2009 to December 18, 2009. The Court directs that notice of such extension be distributed to the class by direct mail to TPPs and via the existing website for TPPs and consumers.

13. The Court holds that the notice provisions set forth under the Class Action Fairness Act, 28 U.S.C. § 1715 were complied with in this case.

14. The Court holds that the Class Escrow Account established to hold the Settlement Fund is approved in order that it may be a Qualified Settlement Fund for federal tax purposes pursuant to Treas. Reg. § 1.468B-1.

15. The Court reconfirms the appointment of Hagens Berman Sobol Shapiro LLP and Cotchett Pitre & McCarthy as Class Counsel.

16. Except as to the claims of any individuals and TPPs who have validly and timely requested exclusion from the Class, the Released Claims, the Class Action, and all claims asserted or contained in the Class Action, are HEREBY DISMISSED WITH PREJUDICE against Pfizer and all Released Parties. Plaintiffs and Pfizer are to bear their own costs, except as otherwise provided in the Settlement Agreement.

17. By operation of this Judgment (and regardless of whether they have signed and delivered a Proof of Claim and Release), the Releasers shall release all Released Claims, as set forth in Paragraph 2.U. of the Settlement Agreement, which is incorporated by this reference. By operation of this Judgment, the Releasers are forever barred and enjoined from seeking to establish liability based in whole or in part on any of the Released Claims, as forth in Paragraphs 2.U. and 13 of the Settlement Agreement, which are incorporated by this reference, and are barred and enjoined from asserting any known or unknown, suspected or unsuspected, contingent or non-contingent Released Claims, including Unknown Claims, without regard to the subsequent discovery or existence of different or additional facts.

18. Pursuant to the All Writs Act, 28 U.S.C. § 1651, this Court shall retain the authority to issue any order necessary to protect its jurisdiction from any action, whether in state or federal court, that threatens to undermine the settlement in this case and this Final Order and Judgment. In addition, the Court reserves exclusive and continuing jurisdiction over the Class Action, the Class, and the Released Parties for the purposes of (a) supervising the implementation, enforcement, construction, and interpretation of the Settlement Agreement, the Plan of Allocation, and this Judgment, and (b) supervising the distribution of the Settlement Fund.

19. The Court also finds Class Counsels' fee petition fundamentally fair, adequate and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (citing *Report of the Third Circuit Task Force, Court Awarded Attorney Fees (Task Force Report)*, 108 F.R.D. 237, 251 (3d Cir. 1985)). The Court finds that Purchaser Counsel have expended considerable time and labor in the negotiation and implementation of the Settlement; that the efforts of Purchaser Counsel have resulted in a resolution that confers substantial benefits on members of the classes, and that those benefits are comparable to other similar settlements and were achieved sooner than most, if not all, similar settlements; that Purchaser Counsel undertook this matter with no guarantee of payment and thus shouldered considerable risk; and that the attorneys' fees award in this case is not inconsistent with awards in similar cases. Reversal or modification on appeal of the Court's award of attorneys' fees and expenses to Purchaser Counsel shall not affect the finality of this Judgment as it relates to Pfizer and the Released Parties and shall not constitute grounds for cancellation or termination of the Settlement.

20. The Court also finds the requested Incentive Awards to the following Named Plaintiffs, in amounts of $5000 for TPPs and $2000 for Consumers, are reasonable to compensate them for their efforts in this litigation:

Allied Services Division Welfare Fund; ASEA/AFSCME Local 52 Health Benefits Trust; Betty A. Alexander; Bricklayers of Indiana Welfare Fund; Commonwealth Care Alliance; Frankenmuth Financial Group, Inc.; IBEW 673 Fringe Benefit Fund; IBEW Local 129 Fringe Benefit Funds; IBEW Local 683 Fringe Benefit Funds; IBEW Local 32 Health and Welfare Fund; Indiana Carpenters Health and Welfare Fund; Indiana Electrical Workers Local 481 Benefit Trust;

1  Indiana State Council of Roofers Health and Welfare Fund; Indiana State District Council of
2  Laborers and Hod Carriers Welfare Fund; Michiana Area Electrical Workers Health and Welfare
3  Fund; National Healthcare Insurance Company; New England Carpenters Health Benefits Fund;
4  Painters Local No. 469 Health and Welfare Fund; Painting Industry Insurance and Annuity Funds;
5  Pipe Trades Industry Health and Welfare Plan; Plumbers and Steamfitters Local No. 166 Health
6  and Welfare Plan; Plumbers and Steamfitters Local 42 Health & Welfare Plan; Plumbers Local No.
7  210 Health and Welfare Fund; Service Employee International Union Local No. 3 Health &
8  Welfare Fund; Sheet Metal Workers Local No. 20 Welfare and Benefit Fund; Sheet Metal
9  Workers' International Association Local No. 28 of Metropolitan New York & Long Island;
10 Southern Ohio Painters Health and Welfare Fund; Watters, Linda A., Offices of Financial and
11 Insurance Services for the State of Michigan in her capacity as Rehabilitator of The Wellness Plan
12 and in her capacity as Liquidator of Michigan Health Maintenance Organization Plans, Inc.,
13 formerly known as Omnicare Health Plan, Inc.; Nancy Ayers; Aurora Balloveras; Clara
14 Fontanilles; Dorothy Greaves; Sarah Hare; Ronnie L. Hatcher; Beatrice Howard; Georgia
15 Katsanos; Stephen Keisker; Rose Lohman; Michelle Madoff; Helen Marconi; Robert Mariconi;
16 Evelyne Mayes; Judith C. Meredith; Nancy Milano; Mary Morris; and June Swan.

20. The Plan of Allocation submitted by Class Counsel and any orders entered regarding the Plan of Allocation shall be considered to be separate from this Judgment. Reversal or modification on appeal of the Plan of Allocation or any orders regarding the Plan of Allocation shall not affect the finality of this Judgment as it relates to Pfizer and the Released Parties and shall not constitute grounds for cancellation or termination of the Settlement.

21. Neither the Settlement Agreement nor the settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.

22.     **FINAL JUDGMENT** is hereby **ENTERED** directing Pfizer Inc., the Class Representatives, and the Members of the Class to comply and perform in accordance with the terms of the Settlement Agreement, and dismissing with prejudice all claims asserted against Pfizer on behalf of the classes.

DATED:  This __9th__, day of __October__, 2009

_____
Honorable Charles R. Breyer, Judge
United States District Court

