1  Elizabeth J. Cabraser
   ecabraser@lchb.com
2  Scott P. Nealey
   snealey@lchb.com
3  LIEFF, CABRASER, HEIMANN, & BERNSTEIN, LLP
   275 Battery Street, 30th Floor
4  San Francisco, CA 94111-3339
   Telephone: (415) 956-1000
5  Facsimile: (415) 956-1008

6  *Plaintiffs' Liaison Counsel*

7  Steve W. Berman
   steve@hbsslaw.com
8  Lisa Hasselman
   lisah@hbsslaw.com
9  HAGENS BERMAN SOBOL SHAPIRO LLP
   1301 Fifth Avenue, Suite 2900
10 Seattle, Washington 98101
   Telephone: (206) 623-7292
11 Facsimile: (206) 623-0594

12 *Plaintiffs' Purchaser Counsel*

13 [Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BEXTRA AND CELEBREX MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION | No. M:05-CV-01699-CRB<br><br>MDL No. 1699 |
| THIS RELATES TO:<br><br>ALL PURCHASER CASES | STIPULATION AND [PROPOSED] ORDER TO TRANSFER SETTLEMENT FUNDS AND TO APPOINT NEW ESCROW AGENT |

Pursuant to Paragraph I.5 of the Bextra Celebrex Purchaser Settlement Escrow Agreement dated March 13, 2009 (Exhibit 8 to the Settlement Agreement attached to the Declaration of Steve W. Berman, filed March 13, 2009 Docket No. 2739), fully executed version attached hereto as

STIPULATION AND PROPOSED ORDER TO TRANSFER           - 1 -
SETTLEMENT FUNDS - M:05-CV-01699-CRB
001682-15 338720 V1

1  Exhibit A, Plaintiffs' Purchaser Counsel respectfully submits this Stipulation and Proposed Order

2  to Transfer Settlement Funds and to Appoint New Escrow Agent.

3      The parties stipulate to remove Frontier Bank, Corporate Trust Department, ("Frontier"), as

4  Escrow Agent and appoint KeyBank Trust Department, 1301 Fifth Avenue, Suite 2400, Seattle,

5  WA 98101 ("KeyBank") as Escrow Agent under the terms of the Escrow Agreement. In all

6  material respects other than the identity of the Escrow Agent, the Escrow Agreement is to remain

7  unchanged.

8      Pursuant to paragraph I.5 of the Escrow Agreement, an order of this Court is necessary for

9  the transfer of funds to take place.

10     For the foregoing reasons, the parties stipulate that 1) Frontier is directed to liquidate all

11 investments of remaining Bextra Celebrex settlement assets and transfer all remaining settlement

12 funds to KeyBank and 2) KeyBank is hereby appointed the Escrow Agent to hold and invest any

13 remaining settlement funds in accordance with the Escrow Agreement, and the Escrow Agreement

14 is deemed amended to the extent necessary to be consistent with this Stipulaton and Order.

15     IT IS SO STIPULATED.

16 Dated: November 13, 2009         HAGENS BERMAN SOBOL SHAPIRO LLP

By  /s/ Steve W. Berman
    Steve W. Berman
steve@hbsslaw.com
Lisa Hasselman
lisah@hbsslaw.com
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

COTCHETT, PITRE & McCARTHY

Frank M. Pitre
fpitre@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

*Purchaser Plaintiffs' Counsel*

Dated: November 13, 2009

DLA PIPER US LP

By /s/ Thomas P. Hanrahan
  Loren Brown
Thomas Hanrahan
Pfizer's Liaison Counsel
SIDLEY AUSTIN LLP
Thomas P. Hanrahan
555 West Fifth Street
Suite 4000
Los Angeles, CA 90013-1010

*Attorneys for Pfizer Inc., Pharmacia Corporation and G.D. Searle & Co.*

IT IS SO ORDERED.

DATED: November 16, 2009



HON. CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

# **EXHIBIT A**

# Exhibit 8: ESCROW AGREEMENT

This Escrow Agreement is made and entered into by Frontier Bank through its Trust Department (the "Escrow Agent"), Pfizer Inc. ("Pfizer"), and the Class Representatives as defined in the Settlement Agreement and Release dated on or about March 13, 2009 ("Settlement Agreement"). Pfizer and the Class Representatives are herein referred to collectively as the "Settling Parties." Unless otherwise provided herein, the terms defined in the Settlement Agreement shall have the same meaning in this Escrow Agreement.

**I.  Terms and Conditions**

1. Pfizer and Class Counsel hereby appoint the Escrow Agent to establish and administer an escrow account (the "Class Escrow Account") on the terms and conditions set forth herein, and the Escrow Agent hereby accepts such appointment on such terms and conditions.

2. Pfizer shall deliver to the Escrow Agent a total settlement payment in the amount of $89,000,000.00 as required by Section 9 of the Settlement Agreement available in United States funds (the "Class Escrow Funds") pursuant to the wire transfer instructions provided in Section IV, Paragraph 1 below. The Escrow Agent shall confirm receipt of such funds, or any portion of such funds, as the case may be, in writing to the Settling Parties. The total amount of $89,000,000.00 shall be delivered as provided for in Paragraph 9.A. of the Settlement Agreement within 10 days of the Court's entry of the Preliminary Approval Order.

3. Until the Escrow Agent receives written notification from counsel for Pfizer Defendants and Class Counsel that the Settlement Agreement has become effective, it shall invest and reinvest the Escrow Funds as provided for in Paragraph 9.C.(2) of the Settlement Agreement.

4. All interest on or other income realized by investment of the Class Escrow Funds or any portion thereof shall be accumulated and added to the Class Escrow Funds. Any investment losses realized by investment of Class Escrow Funds or any portion thereof shall be charged to the Class Escrow Funds.

5. This Escrow Agreement and the Class Escrow Funds are subject to the supervision and control of the Settlement Court. Except as set forth in paragraph 6(a) and 6(b) of this Section I, the Class Escrow Funds shall be withdrawn or otherwise removed from the Class Escrow Account established pursuant to this Escrow Agreement only in accordance with the terms of an order of the Settlement Court delivered to the Escrow Agent by Class Counsel with a copy simultaneously delivered to Pfizer's Counsel.

6. The Escrow Agent shall deliver the Class Escrow Funds only as set forth below:

    (a) Following receipt of written notice signed by Pfizer's Counsel and Class Counsel stating that the Settlement Agreement has not been approved by the Settlement Court or has been cancelled or terminated or has otherwise

become null and void for any reason, the Escrow Agent shall disburse any portion of the Class Escrow Funds received into the Class Escrow Account, including any interest or other income earned thereon, to Pfizer, net of taxes paid or due with respect thereto, the fees and costs paid or incurred for the settlement notice, any fees or costs paid or incurred for administration of the Class Escrow Account;

(b) Regardless of whether the Settlement Agreement has become effective, the Escrow Agent shall disburse funds as needed for:

(i) payment of taxes or estimated taxes that become due on income earned by the Class Escrow Funds, as determined by Rust Consulting, Inc., the Claims Administrator for the Settlement, with written notice of such payments to Class Counsel and Pfizer's Counsel;

(ii) payment of the costs associated with claims administration including, but not limited to, settlement notice. Payment of the costs associated with claims administration including, but not limited to, settlement notice, will be made at the direction of Class Counsel, with written notice of such payments provided to Pfizer's Counsel; and

(iii) payment of up to 50% of any Fee and Expense Award to Class Settlement Counsel, as provided for in Paragraph 10.A.(3) of the Settlement Agreement.

(c) After receipt of written notice signed by counsel for Pfizer and Class Settlement Counsel stating that the Settlement Agreement has become effective, the Escrow Agent shall, upon receipt of an order of the Court so directing:

(i) disburse any remaining amounts for reimbursement or payment of costs and expenses incurred in the provision of notice to the members of the Class and the administration and distribution of the settlement, in accordance with such order of the Court; and

(ii) distribute the remaining Escrow Funds, as ordered by the Court; provided, however, that the Escrow Agent shall retain amounts in the Class Escrow Account necessary for the payment of taxes or estimated taxes and fees and expenses of the Escrow Agent, as directed by Class Counsel.

7. The Class Escrow Funds are intended by the parties hereto to be treated as a "qualified settlement fund" for federal income tax purposes pursuant to Treas. Reg. § 1.468B-1 and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment. At the request of the Settling Parties, a "relation

back election" as described in Treas. Reg. § 1.468B-1(j) shall be made so as to enable the Class Escrow Funds to be treated as a qualified settlement fund from the earliest date possible, and the parties hereto shall take all actions as may be necessary or appropriate to this end.

8. After the Effective Date of the Settlement, Pfizer shall no longer have any interest in the Class Escrow Funds, and shall no longer have any rights or obligations under this Escrow Agreement.

9. All counsel for all Settling Parties warrant to and agree with the Escrow Agent that, unless otherwise expressly set forth in this Escrow Agreement, there is no security interest (as defined in the Uniform Commercial Code) in the Class Escrow Funds or any part of the Class Escrow Funds; no financing statement under the Uniform Commercial Code of any jurisdiction is on file in any jurisdiction claiming a security interest in or describing, whether specifically or generally, the Class Escrow Funds or any part of the Class Escrow Funds; and the Escrow Agent shall have no responsibility at any time to ascertain whether or not any security interest exists in the Class Escrow Funds or any part of the Class Escrow Funds or to file any financing statement under the Uniform Commercial Code of any jurisdiction with respect to the Class Escrow Funds or any part thereof.

## II. Provisions as to the Escrow Agent

1. This Escrow Agreement expressly and exclusively sets forth the duties of the Escrow Agent with respect to any and all matters pertinent hereto and no implied duties or obligations shall be read into this Escrow Agreement against the Escrow Agent.

2. This Escrow Agreement constitutes the entire agreement between the Escrow Agent and the other parties hereto in connection with the subject matter of this Escrow Agreement. Unless it is signed by the Escrow Agent as a party, no other agreement including the Settlement Agreement entered into between the parties shall be considered as adopted or binding, in whole or in part, upon the Escrow Agent, except to the extent such other agreement has been expressly incorporated by reference into this Escrow Agreement.

3. The Escrow Agent shall in no way be responsible for nor shall it be its duty to notify any party hereto or any other party interested in this Escrow Agreement of any payment required or maturity occurring under this Escrow Agreement or under the terms of any instrument deposited therewith unless such notice is explicitly provided for in this Escrow Agreement.

4. The Escrow Agent shall have the right to liquidate any investment held in order to provide funds necessary to make required payments under this Escrow Agreement. The Escrow Agent shall have no liability as a result of any liquidation of any

investment prior to its maturity when that liquidation is necessary to provide funds to make required payments under this Escrow Agreement.

5. The Escrow Agent shall be protected in acting upon any document which the Escrow Agent in good faith believes to be genuine and what it purports to be, including, but not limited to, Court orders authorizing release, disbursement or retention of the Class Escrow Funds.

6. In the event of any disagreement between any of the parties to this Escrow Agreement, or between any of them and any other party, resulting in inconsistent claims or demands being made in connection with the matters covered by this Escrow Agreement, or in the event that the Escrow Agent, in good faith, is in doubt as to what action it should take hereunder, the Escrow Agent may, at its option, refuse to comply with any claims or demands on it, or refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists, and in any such event, the Escrow Agent shall not be or become liable in any way or to any party for its failure or refusal to act, and the Escrow Agent shall be entitled to continue to refrain from acting until (i) the rights of all interested parties shall have been fully and finally adjudicated by the Settlement Court, or (ii) all differences shall have been resolved and all doubt eliminated by agreement among all of the interested parties, and the Escrow Agent shall have been notified thereof in writing signed by all such parties.

7. The Escrow Agent shall be indemnified and held harmless by Class Counsel from anything which it may do or refrain from doing in connection herewith, or for any claims, demands or losses, or for any damages made or suffered by any party to this Escrow Agreement, excepting such as may arise through or be caused by the Escrow Agent's breach of this Escrow Agreement or any willful misconduct or gross negligence.

8. The parties hereto irrevocably and unconditionally submit to the jurisdiction of the United States District Court for the Northern District of California for purposes of any suit, action or proceeding to enforce any provision of, or based upon any right arising out of this Escrow Agreement, and the parties hereto agree not to commence any such suit, action or proceeding except in such Court.

9. The Escrow Agent will maintain a daily record of all transactions in the Class Escrow Account and will provide the Settling Parties with a periodic statement (at a frequency to be determined from time to time but no less often than quarterly) reflecting all such transactions and the property held in the Class Escrow Account as of the end of the reporting period.

10. The Escrow Agent shall have the authority to retain a subcustodian for any or all property for as long as it deems necessary. The Escrow Agent shall also have the authority to retain other agents, including attorneys, to assist it in the performance of its duties.

### III. Compensation of the Escrow Agent

1. The Escrow Agent shall be entitled to reasonable compensation as well as reimbursement for its reasonable costs and expenses incurred in connection with the performance by it of services under this Escrow Agreement (including reasonable fees and expenses of the Escrow Agent's counsel). Class Settlement Counsel is solely responsible for paying the Escrow Agent the amounts to which it is entitled, and such compensation shall be paid from the funds in the Class Escrow Account, after Court approval and subject to the other provisions of this paragraph.

2. The Escrow Agent shall not debit the Class Escrow Funds for any charge for its fees or its costs and expenses, until approved by Class Settlement Counsel after written notice to Pfizer's Counsel. Fees and expenses of the Escrow Agent charged against the Escrow Funds shall, to the extent possible, be paid out of interest earned by the Escrow Funds.

### IV. Miscellaneous

1. Any notice, request for consent, report, or any other communication required or permitted in this Escrow Agreement shall be in writing, with a copy by email, and shall be deemed to have been given when personally delivered to the party specified or when placed in the United States mail, registered or certified, with return receipt requested, postage prepaid and addressed as follows:

If to the Escrow Agent:

> Frontier Bank - Trust Department
> Attn: Ms. Kari Dahl
> 2825 Colby Avenue
> Everett, WA 98201

> Cash / Wire Instructions:

> Frontier Bank Everett
> ABA Routing #1251-07626
> Frontier Bank - Trust Department Account # 3226000226
> FFC: *Bextra-Celebrex Settlement Escrow Fund # 62-0927*

If to Class Counsel:

> Steve W. Berman
> HAGENS BERMAN SOBOL SHAPIRO LLP
> 1301 Fifth Avenue, Suite 2900
> Seattle, WA 98101

> Telephone: (206) 623-7292
> Facsimile: (206) 623-0594
> Email: Steve@hbsslaw.com

If to Pfizer:

> Loren Brown
> John C. Dougherty
> DLA Piper
> 1251 Avenue of the Americas
> New York, NY 10020-1104
> Telephone: (212) 335-4500
> Facsimile: (212) 335-4501
> Email: loren.brown@dlapiper.com

If to the Claims Administrator:

> Dominique Carlson
> Rust Consulting, Inc. (formerly Complete Claim Solutions, LLC)
> 5210 Hood Road
> Palm Beach Gardens, Florida 33418
> Telephone: (561) 651-7777
> Facsimile: (561) 651-7788
> Email: dcarlson@rustconsulting.com

Any party may unilaterally designate a different address by giving notice of each change in the manner specified above to each other party.

2. Any disputes arising under this Escrow Agreement will be governed by California law. It shall inure to and be binding upon the parties hereto and their respective successors, heirs, and assigns. All representations, covenants, and indemnifications contained in this Escrow Agreement shall survive the termination of this Escrow Agreement.

3. The terms of this Escrow Agreement may be altered, amended, modified or revoked only by an instrument in writing signed by all the parties hereto.

4. If any provision of this Escrow Agreement shall be held or deemed to be, or shall in fact be, illegal, inoperative or unenforceable, the same shall not affect any other provision or provisions herein contained or render the same invalid, inoperative or unenforceable to any extent whatsoever.

5. The Escrow Agent may resign at any time from its obligations under this Escrow Agreement by providing written notice to the parties hereto. Such resignation shall be effective not less than thirty (30) days after such written notice has been given. In the event no successor escrow agent has been appointed on or prior to

the date such resignation becomes effective, the Escrow Agent shall be entitled to tender into the custody of a court of competent jurisdiction all assets then held by it hereunder and shall thereupon be relieved of all further duties and obligations under this Escrow Agreement. The Escrow Agent shall have no responsibility for the appointment of a successor escrow agent. Unless otherwise provided in this Escrow Agreement, final termination of this Escrow Agreement shall occur when the Escrow Agent shall have released from the Class Escrow Account all amounts pursuant to Section I, paragraph 6 above.

6. All titles and headings in this Escrow Agreement are intended solely for convenience of reference and shall in no way limit or otherwise affect the interpretation of any of the provisions hereof.

7. This Escrow Agreement may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

8. This Escrow Agreement shall be effective as of the date the last party to this Escrow Agreement fully and appropriately executes this document.

IN WITNESS WHEREOF, the undersigned have caused this Escrow Agreement to be duly executed as of the date first above written.

Dated: March 31, 2009

**Counsel for Pfizer**

Loren Brown
John C. Dougherty
DLA Piper
1251 Avenue of the Americas
New York, NY 10020-1104
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

**Class Settlement Counsel**

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

**Escrow Agent**

Kari L Dahl, VP+Manager Trust Administration
Frontier Bank
2825 Colby Ave
Everett, WA 98201
Telephone: (425) 258-0242
Facsimile: (425) 258-0216

- 7 -