Elizabeth J. Cabraser
ecabraser@lchb.com
Scott P. Nealey
snealey@lchb.com
LIEFF, CABRASER, HEIMANN, & BERNSTEIN, LLP
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs' Liaison Counsel*

Steve W. Berman
steve@hbsslaw.com
Lisa Hasselman
lisah@hbsslaw.com
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 8th Avenue, Suite 3300
Seattle, Washington  98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Plaintiffs' Purchaser Counsel*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: BEXTRA AND CELEBREX MARKETING, SALES PRACTICES, AND PRODUCT LIABILITY LITIGATION ) ) ) ) | No. M:05-CV-01699-CRB<br><br>MDL No. 1699 |
| THIS RELATES TO:<br><br>ALL PURCHASER CASES ) ) ) ) ) ) ) | PURCHASER PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUND |

001682-15  377284 v1

1  Purchaser Plaintiffs hereby move for entry of an order approving the distribution of the
2  settlement fund.  The reasons are as follows:

**A.  Introduction**

This action was brought by third-party payors ("TPPs"), *i.e.*, health plans, employee benefit plans, and commercial insurers, and consumers who paid for prescriptions of Bextra and/or Celebrex.  Purchaser Plaintiffs alleged that the manufacturer of Bextra and Celebrex, Pfizer Inc., engaged in unfair and deceptive conduct in connection with the marketing of Bextra and Celebrex, causing TPPs and consumers to pay more for Bextra and Celebrex then they otherwise would have paid.

In October 2009, the parties reached a settlement under which Pfizer agreed to pay $85 million for the benefit of the class and up to an additional $4 million for the costs of notice and claims administration.  Since that time, Rust Consulting, Inc. ("Rust"), the Claims Administrator, and Kinsella Media, LLC ("Kinsella"), the Class Notice Consultant, both appointed by the Court, have notified potential class members of the settlement, received and audited the claims received, communicated extensively with claimants concerning their claims, determined the validity of claims and eligibility of claimants, and determined the *pro rata* share of the settlement fund and amount payable to each eligible claimant.  Accordingly, Purchaser Plaintiffs request that the Court enter an order:

- Approving the procedures used and actions taken by the Class Notice Consultant and the Claims Administrator;

- Approving payment of the timely-filed valid claims as determined by the Claims Administrator;

- Approving payment of valid, but late-filed, claims as determined by the Claims Administrator;

- Approving disallowance of claims identified by the Claims Administrator as deficient, invalid, or otherwise ineligible for payment;

- Approving the spillover of unclaimed amounts amongst the subclasses as agreed upon in the Plan of Allocation and as calculated by the Claims Administrator; and

- Directing distribution of the settlement fund to eligible claimants in *pro rata* shares as determined by the Claims Administrator.

B.     **Procedural Background**

In an order dated March 23, 2009 (Dkt No. 2926), the Court granted preliminary approval, certifying three separate subclasses for settlement purposes.  In its preliminary approval order, the Court also appointed Rust as Claims Administrator and Kinsella as the Class Notice Consultant. *See* Dkt. No. 2926, p. 4.  On April 9, 2009, the Court granted approval of Purchaser Plaintiffs' unopposed plan to provide notice of the settlement to potential class members ("Notice Order"). Dkt. No. 3030.

To provide notice to the TPP subclass, and pursuant to the Court approved Notice Plan, Rust sent notice of the settlement and a proof of claim form to the over 40,000 entities then-listed in Rust's comprehensive database of TPPs, their lawyers, agents, and other representatives. Declaration of Eric J. Miller, Managing Senior Project Administrator of Rust Consulting, Inc., Concerning Mailing and Publication of Notice to the Class, Dkt. No. 3124,  ("Miller Publication Aff.") ¶ 7.  To provide notice to the consumer subclasses, also pursuant to the Court approved Notice Plan, Kinsella caused a summary notice of the settlement to be published on television, in print and on the internet.  Declaration of Katharine Kinsella in support of Proposed Class Action Settlement Notice Program, Dkt. No. 3125.

On September 25, 2009, the Court held a hearing on Purchaser Plaintiffs' motion for final approval of the settlement.  On October 9, 2009, the Court issued an order and judgment finally approving the settlement as fair, reasonable and adequate and dismissing the action with prejudice. Dkt. No. 3222.  In the final approval order, at ¶ 18, the Court retained jurisdiction for purposes of supervising and approving any matters relating to the administration of the settlement. *Id*.

C.     **Claims Processing and Auditing Activities**

In May 2009, as notice to potential class members of the settlement was ongoing, Rust began receiving claims.  Over the next several months, Rust received 19,264 claims, representing a total claimed amount of $4,102,468,494.17.   Declaration of Eric J. Miller Regarding Allocation and Distribution of the Net Settlement Fund to Consumer Claimants and Third-Party Payors

- 3 -

("Miller Decl."), ¶¶ 5-7.  Rust applied several levels of review to the submissions it received, by both its data entry staff and its auditing staff.  *Id*. ¶¶ 11-22 and 29-38.

Rust's data entry department identified certain claims that, as submitted, were deemed to be deficient in that they failed to include information or records required to calculate the claimant's *pro rata* share but which, if corrected, would make the claim eligible for inclusion in the settlement.  Rust followed up extensively with such claimants to obtain the required data.  *Id.* ¶¶ 16-22 and 33-38.

Similarly, Rust's auditors identified certain claims filed by claimants who appeared to be ineligible to participate in the settlement because they had purchased outside the class period, or for some other reason.  Rust followed up extensively to afford these claimants an opportunity to explain or correct their claims.  *Id.*

Rust's auditors also identified certain instances in which claims for the same payments had been filed both by a class member TPP and by a TPA which administered the health plan for the TPP that made a claim.  *Id.* ¶ 35 and Ex. G.

As a result of the Rust inquiries and responses, many deficiencies and ineligibility problems were cured, and many questions concerning proposed adjustments were answered.   Some claimants, however, despite ample opportunity, did not or were not able to correct their deficiencies or demonstrate eligibility, or were not able to satisfy questions concerning adjustments.  As a result of its audit and analysis, Rust proposes excluding 1,489 claims from participation in the settlement.  *Id.*  ¶¶ 5-7.

Throughout the data submission process, Rust communicated frequently with claimants concerning data requirements to assure completeness of submissions, verify the payment data submitted by claimants, determine claimant eligibility, and provide claimants with the greatest possible opportunity to prove their claims and participate in the settlement.  *Id. passim.*  As a result of the extensive review and communications procedures employed by Rust, Rust does not believe that any of the claimants whose claims Rust has determined to exclude from the settlement or adjust are challenging Rust's determination.  *Id.* ¶ 45.

PURCHASER PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUND - M:05-CV-01699-CRB
001682-15  377284 v1

### D. Request for Approval of Late-Filed Claims

Rust received 168 claims representing a total claimed amount of $3,414,700.60 that were postmarked after the filing deadline of December 18, 2009, but which were otherwise valid claims. *Id.* ¶¶ 25, 41. In Rust's experience, courts supervising class action distributions commonly allow payment of late-filed claims when the claims would be otherwise eligible for payment. *Id.* ¶ 41. Accordingly, plaintiffs respectfully request that the Court allow late-filers to participate in the settlement.

### E. Distribution of the Settlement Fund

The total cost of notice and administration of the settlement paid or payable to Rust, Kinsella and the banks responsible for administering the funds is estimated to be $3,057,315.77. Declaration of Steve W. Berman in support of Purchaser Plaintiffs' Unopposed Motion for an Order Approving Distribution of Settlement Fund, Exhibit A. Pursuant to the settlement agreement, the $4 million allocated to notice and administration will fund this amount. The remainder, as per the settlement agreement, will be refunded to Pfizer once all notice and administration costs have been paid. Thus, notice and administration of the settlement imposed no additional costs on the class, and the total settlement amount available to the class for distribution to the class, net of attorney fees and litigation expenses, plus accrued interest, is $62,764,841.66. *Id.*

Based on Rust's review and audit of the claims submitted in this settlement, Rust recommends distribution of the net settlement fund on a *pro rata* basis to each eligible claimant as proposed in the Declaration filed herewith. Miller Decl. ¶¶ 5-7.

WHEREFORE, Purchaser Plaintiffs respectfully request that the Court enter an order approving distribution of the settlement fund. Plaintiffs submit herewith a proposed order for the convenience of the Court.

PURCHASER PLAINTIFFS' UNOPPOSED MOTION FOR AN ORDER APPROVING DISTRIBUTION OF SETTLEMENT FUND - M:05-CV-01699-CRB
001682-15  377284 v1

- 4 -

| | | |
|---|---|---|
| 1 | | |
| 2 | Dated:  November 16, 2010 | HAGENS BERMAN SOBOL SHAPIRO LLP |

By  /s/ Steve W. Berman  _____
   Steve W. Berman
steve@hbsslaw.com
Lisa Hasselman
lisah@hbsslaw.com
1918 8th Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594

COTCHETT, PITRE & McCARTHY

Frank M. Pitre
fpitre@cpmlegal.com
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA  94010
Telephone:  (650) 697-6000
Facsimile:  (650) 697-0577

*Purchaser Plaintiffs' Counsel*

PURCHASER PLAINTIFFS' UNOPPOSED MOTION FOR AN
ORDER APPROVING DISTRIBUTION OF SETTLEMENT  - 5 -
FUND - M:05-CV-01699-CRB
001682-15  377284 v1